Argued and submitted July 3, reversed and
remanded for a new trial December 18, 1979

## STATE OF OREGON,
*Respondent,*

*v.*

## PHYLL MENDACINO,
aka Joe Feathercrow,
*Petitioner.*

## (TC C 77-11-15807, CA 10296, SC 26046)

603 P2d 1376

J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause for petitioner. With him on the brief were Gary D. Babcock, Public Defender, and B. David Thomas, Certified Law Student.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General.

LENT, J.

**LENT, J.**

The issue presented in this criminal case is whether a confession made by the defendant to a psychiatrist prior to arraignment should have been suppressed by the trial court.

On the night of Thursday, November 3, 1977, the defendant was present at the apartment where the six year old child of the defendant's girl friend had been murdered. He was questioned at the scene by the police and at about 11 p.m. he was taken to a hospital to receive medical attention for a cut on his arm. Because the defendant's statements to the police were inconsistent and contradictory, the police, at about midnight, considered the defendant a suspect in the murder. At 1:30 a.m. the police read the defendant his *Miranda*[1] rights.

The defendant was transported to the police station at about 2 a.m. and was questioned by two detectives from 3 a.m. to 5 a.m. Despite the defendant's repeated statements that he did not want to talk and that he wanted an attorney, the detectives continued the interrogation and elicited a confession from the defendant. The same two detectives again interviewed the defendant six hours later at 11 a.m. Friday morning. The defendant again confessed.

The defendant was held in jail over the weekend and did not talk with an attorney. During the noon hour on Monday, prior to arraignment, the same two detectives, at the request of the District Attorney's office, transported the defendant in handcuffs to the office of a psychiatrist. The psychiatrist advised the defendant of his *Miranda* rights and explained to him that what he told the psychiatrist "probably could hurt him if he raised a defense based on mental disease."[2]

---

[1] *See Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed2d 694 (1966).

[2] ORS 161.295(1) (1977):
"A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial
*(Continued on following page)*

[233]

The defendant talked with the psychiatrist in the presence of the two detectives and again confessed.

The defendant was arraigned in district court on Monday afternoon, November 7, 1977. A complainant's information had been filed charging the defendant with murder, ORS 163.115. No reason appears in the record why the arraignment was not held during the first 36 hours of custody as required by ORS 135.010.[3]

*(Continued from previous page)*
capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."

ORS 161.305 (1977):

"Mental disease or defect excluding responsibility under ORS 161.295 * * * is an affirmative defense."

[3] ORS 135.010 (1977):

"When the accusatory instrument has been filed, the defendant, if he has been arrested, or as soon thereafter as he may be, shall be arraigned thereon before the court in which it is found. Except for good cause shown or at the request of the defendant, if the defendant is in custody, the arraignment shall be held during the first 36 hours of custody, excluding holidays, Saturdays and Sundays. In all other cases, the arraignment shall be held within 96 hours after the arrest."

The trial judge found that the defendant became a suspect when the detective who interviewed the defendant at the hospital requested that the defendant's clothing be taken for testing. The detective testified that he requested the defendant's clothing at 12:05 a.m., and at that time he considered the defendant to be a suspect in the murder and would not have allowed the defendant to leave. Therefore the defendant would be considered under arrest at 12:05 a.m., Friday, November 4, 1977. *Cf.,* ORS 133.005(1). The defendant was arraigned in the afternoon of Monday, November 7, 1977.

ORS 135.010 appears to require that the actual arraignment be held within the time limits specified, and that the arraignment include the proceedings set forth in ORS 135.020:

"The arraignment shall be made by the court, or by the clerk or the district attorney under its direction, and consists of reading the accusatory instrument to the defendant, delivering to him a copy thereof and indorsements thereon, including the list of witnesses indorsed on it or appended thereto if the accusatory instrument is an indictment, asking him how he pleads to the charge."

Although ORS 135.010 is not completely clear, it appears that even if the accusatory instrument were filed within the time limits, the statute is not complied with until a timely arraignment occurs. The legislative
*(Continued on following page)*

[234]

An indictment was filed in the circuit court on Wednesday, November 9, 1977, charging the defendant with murder. The defendant did not assert the affirmative defense of mental disease or defect excluding responsibility, ORS 161.295(1) and 161.305. The trial judge suppressed the confessions elicited in the first and second police station interrogations on the ground that both confessions were extracted in violation of defendant's right to counsel. The state did not appeal, ORS 138.060(3).

A jury found the defendant guilty of murder. The defendant appealed, assigning as error the circuit court's denial of the defendant's motion to suppress statements made by defendant to the state's psychiatrist. The Court of Appeals affirmed the conviction without opinion, 37 Or App 913, 588 P2d 688 (1978). This court allowed review, 286 Or 395 (1979), ORS 2.520.

Appellate review of the voluntariness of a confession requires determination of whether the historical facts found by the trial court are sufficient to meet constitutional standards of due process. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). Cf., *Mincey v. Arizona,* 437 US 385, 398, 98 S Ct 2408, 2417, 57 L Ed2d 290, 304 (1978).

The defendant claims that the third confession was the product of the first two inadmissible confessions and that the taint of the first two confessions was not sufficiently dissipated.

In Oregon, a confession is initially deemed involuntary. *State v. Ely,* 237 Or 329, 332, 390 P2d 348 (1964). Before a confession can be received in evidence, the state must show that it was voluntarily given, that is, made without inducement through fear or promises, direct or implied. *Cf.,* ORS 136.425(1). This has been

*(Continued from previous page)*
history discloses that the Commission's intent was to use arraignment in its double meaning, that is, an individual can be arraigned in district court on an information charging him with a felony, but because he does not go to trial in district court, the individual is arraigned again in circuit court.

the rule in Oregon for almost a century. *See State v. Wintzingerode,* 9 Or 153, 160-161 (1881). *Cf., Bram v. United States,* 168 US 532, 542-543, 18 S Ct 183, 42 L Ed 568 (1897). A compelled confession is offensive not because the victim has a grievance against the police, but because coerced statements are not premises from which a civilized society will infer guilt. *Lyons v. Oklahoma,* 322 US 596, 605, 64 S Ct 1208, 88 L Ed 1481 (1944). The Oregon Constitution embodies these principles by guaranteeing that no person shall be compelled in any criminal prosecution to testify against himself. Or Const. Art 1, § 12. Cf., US Const., Amend. V.

We have noted that defendant was not timely arraigned under the applicable statutes. ORS 135.010 and 135.020. This court has previously held that noncompliance with a statute requiring that an arrested person be taken before a magistrate "without delay"[4] does not result in automatic exclusion of a confession. *State v. Shipley,* 232 Or 354, 375 P2d 237 (1962), cert den, 374 US 811, 83 S Ct 1701, 10 L Ed2d 1034, reh den, 375 US 872 (1963). In that case this court squarely refused to adopt a "McNabb-Mallory" type rule of automatic exclusion. *See, McNabb v. United States,* 318 US 332, 63 S Ct 608, 87 L Ed 819 (1943); *Mallory v. United States,* 354 US 449, 77 S Ct 1356, 1 L Ed2d 1479 (1957). On the other hand, this court has held that a delay in arraignment is an important factor in determining whether a confession was voluntarily given. In *Dorsciak v. Gladden,* 246 Or 233, 239, 425 P2d 177 (1967), we said:

> "[T]he voluntariness of a confession is suspect if it stems from an interrogation which was substituted

---

[4] ORS 135.010 was amended in 1973 to include the 36 hour and 96 hour time limits. Former ORS 133.550 which required that "the defendant shall in all cases be taken before a magistrate without delay" was repealed. The legislative history indicates that the time limits were intended to provide specific statutory guidelines for speedy arraignment. Minutes, Criminal Law Revision Commission, Full Committee, August 28, 1972, p. 30. The minutes of the House Judiciary Committee are helpful to understanding the statutory change: "The purpose of this was to get the defendant before a magistrate as quickly as possible." Minutes, House Judiciary Committee, Feb. 19, 1973, pp. 6, 7.

for the statutory procedure requiring an accused to be taken before a magistrate without delay. ORS 133.550."

*See* note 3, *supra.* We here consider the failure to arraign timely only as one factor in determining whether the taint of the first two confessions was dissipated.

The effect of a later confession following an inadmissible confession was described by the United States Supreme Court in *United States v. Bayer,* 331 US 532, 540-541, 67 S Ct 1394, 91 L Ed 1654 (1947):

"Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first. But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one *after those conditions have been removed. "* (emphasis added)

The removal of the improper conditions generally involves a change in time and location sufficient to dissipate the pernicious effects of the unlawful conduct.[5] We believe that the Supreme Court in *Clewis v. Texas,* 386 US 707, 710, 87 S Ct 1338, 18 L Ed2d 423 (1967), stated the proper rule that the change, or the "break in the stream of events," should be sufficient to "insulate the statement from the effect of all that went before." *Cf., Evans v. United States,* 375 F2d 355 (8th Cir 1967).

---

[5] In *Westover v. United States,* 384 US 436, 494-497, 86 S Ct 1602, 16 L Ed2d 694 (1966), a companion case to *Miranda,* the Supreme Court considered the analogous situation of successive interrogations. The Court held inadmissible a confession which had been given to FBI interrogators following an interrogation by local officials. The Court found that there was a "continuous period of questioning," but noted that the result would be different if the "accused were taken into custody by the second authority, *removed both in time and place* from his original surroundings * * *." 384 US at 496. (emphasis added)

[237]

The police station confessions were rendered inadmissible not because the required warnings were inadequate, rather, the trial judge found that the detectives persisted in questioning the defendant after he had indicated that he didn't want to talk and wanted a lawyer. Therefore the confessions partake more of actual coercion. *Cf., Knott v. Howard,* 511 F2d 1060 (1st Cir 1975). We must determine whether the coercive effects of the earlier unlawful conduct had been effectively removed. The application of a "tainted fruit of the poisonous tree doctrine" is not automatic, rather the application depends on an analysis of the total circumstances of each case. *United States v. Massey,* 437 F Supp 843 (Fla. 1977). Cf., *Gilpin v. United States,* 415 F2d 638 (5th Cir 1969), *Harney v. United States,* 407 F2d 586 (5th Cir 1969).

The interval of approximately seventy-two hours may be adequate to find that the defendant had been "removed in time" from the original interrogations, however, during this time the defendant remained in jail and did not consult with an attorney. The defendant was not taken before a magistrate for arraignment within the first 36 hours of custody, excluding the weekend, as required by ORS 135.010. The defendant was transported in handcuffs to the office of the psychiatrist. The same two detectives who elicited the original confessions escorted the defendant and were present when the defendant talked to the psychiatrist. No "break in the chain of events" occurred to alter the defendant's belief that his fate had been sealed by the two earlier inadmissible confessions. *Clewis v. Texas, supra.*

In light of all these circumstances, we are required to hold that the coercive conditions which resulted in the first two inadmissible confessions were not effectively removed. The third confession is, therefore, under the law involuntary and cannot be used to incriminate the defendant. The defendant's conviction

must be reversed and his case remanded for a new trial.[6]

---

[6] The defendant also claims that he was not afforded due process because he was informed by the psychiatrist that the examination would be used only if the defendant raised an "insanity defense." Our disposition of the defendant's first claim makes it unnecessary for us to examine this claim. We point out, however, that the privilege against self incrimination under the Oregon and United States Constitutions guarantees that testimony which is procured by any threat *or promise,* direct or implied, will not be used against an accused. *Cf., State v. Ely,* 237 Or 329, 334, 390 P2d 348 (1964); *State v. Wintzingerode,* 9 Or 153, 160-161 (1881). *See Bram v. United States,* 168 US 532, 542-543, 18 S Ct 183, 42 L Ed 568 (1897).