Argued and submitted April 23, reversed and remanded for new trial
January 19, reconsideration denied March 4, petition for review allowed
April 26, 1983 (294 Or 792)
See 295 Or 567, 669 P2d 320 (1983)

STATE OF OREGON,
*Respondent,*

*v.*

RANDY RAY WOLFE,
*Appellant.*

(No. C81-02-31165, CA A22248)

657 P2d 227

Gary D. Babcock, Public Defender, and J. Marvin Kuhn, Chief Deputy Public Defender, Salem, filed the brief for appellant.

Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, and Thomas H. Denney, Assistant Attorney General, Salem, filed the brief for respondent.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

**YOUNG, J.**

Defendant appeals his convictions for first degree rape, ORS 163.375, and second degree kidnapping. ORS 163.225. He assigns as errors the trial court's refusal to suppress certain evidence, the denial of his motion for judgment of acquittal and the failure to merge the convictions. We reverse, because the motion to suppress should have been granted.

The evidence adduced at the hearing on the motion to suppress is not in dispute. On February 17, 1981, following a complaint by the alleged victim, a warrant was issued for defendant's arrest. On that date, three plainclothes officers went to defendant's house to execute the warrant. Defendant invited them inside. His mother was present. A detective asked him if he had been with a girl on the night of February 15, and defendant said that he had. He was asked if he had had sexual intercourse with the girl, and he admitted that he had. The detective asked defendant if he knew the girl's name, and defendant gave the first name of the alleged victim. Then, the detective told defendant about the rape charge and advised him of his *Miranda* rights. Apparently, defendant was then formally arrested. Until then, he had not been told that the officers had a warrant for his arrest. After the *Miranda* warnings, questioning continued. When asked if he had a gun, he said he did not own one. When asked if the police could search his bedroom and car, defendant agreed. His mother added that they could search the whole house. The detective read aloud a consent to search form, and defendant signed it. He volunteered that the officers would find a toy cap gun in the car. They searched the car and seized the cap gun. In the meantime, defendant told the detective that the girl had shown interest in him and had consented to the act of intercourse.

The trial court suppressed the statements made by defendant before and after the *Miranda* warnings. The statements after the warnings were suppressed because of their close proximity in time to the inadmissible earlier statements. The court found, however, that defendant's consent to the search was a sufficient "break in the stream of events" to permit the admission of the cap gun into

evidence. Defendant contends that his consent to search was "fruit" of the *Miranda* violation, because the consent was given in the course of the same conversation in which the *Miranda* violation occurred. The state argues that the consent was not tainted, because it was voluntary.

■ ■ There are, in fact, two issues involved: the voluntariness of the consent and whether the consent is "fruit" of police illegality. *See State v. Quinn,* 290 Or 383, 393-94, 623 P2d 630 (1981) (voluntariness alone may not resolve the question of admissibility).

> "The mere fact that a consent to search is 'voluntary' within the meaning of *Schneckloth v. Bustamonte* does not mean that it is untainted by the prior [illegality] * * *. [T]he mere fact a consent is 'voluntary' * * * does not remove the taint." 3 La Fave, *Search and Seizure* § 11.4, 644 (1978).

In short, "the fruit of the poisonous tree doctrine also extends to invalidate consents which *are* voluntary." 2 La Fave, *Search and Seizure* § 8.2(d), 650 (1978). Because the facts do not suggest that defendant's will was overborne, the admissibility of the evidence turns on whether defendant's consent was tainted. Admissibility is tested by a determination

> "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States,* 371 US 471, 488, 83 S Ct 407, 9 L Ed 2d 441 (1963).

■ In cases involving successive confessions, the taint may become attenuated when there is a change in the time and location sufficient to remove the influence of the illegality. The explanation for the requirement lies in human nature. In *State v. Mendacino,* 288 Or 231, 237, 603 P2d 1376 (1979), the court said:

> "[A]fter an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good."

Before the *Miranda* warnings, defendant had admitted sexual contact with the rape victim, so the rule of the confession cases has some bearing. We look for some

separation in time and location to attenuate the influence the admissions may have had on a consent to search.

■     Here, defendant's admission of sexual contact may well have "let the cat out of the bag" and influenced his decision to consent to a search. The admission stemmed from a clear *Miranda* violation. The consent that followed the admission came moments later in the same conversation, at the same time and in the same location. Under these circumstances, we conclude that defendant's consent was tainted by the violation of his Fifth Amendment rights. The cap gun should have been suppressed.

Because the issue of merger may arise again, we turn to that issue. Defendant assigns as error the trial court's denial of his motion of acquittal on the kidnapping charge and the court's imposition of separate sentences for rape and kidnapping.[1] He argues that the kidnapping offense "merged" with the rape offense because the kidnapping was merely incidental to the rape.

The question of merger of these offenses has been explored. *See, e.g., State v. Garcia,* 288 Or 413, 605 P2d 671 (1980); *State v. Little,* 55 Or App 603, 639 P2d 666 (1982); *State v. Dorsey,* 44 Or App 721, 607 P2d 204 (1979); *see also State v. Dinkel,* 49 Or App 917, 621 P2d 626 (1980) (kidnapping and robbery charges). The *Garcia* court determined, as defendant suggests, that the key to merger of kidnapping with other offenses is whether the detention or asportation is "merely incidental" to the commission of an underlying crime. *State v. Garcia,* 288 Or at 420. Other offenses would not merge if the "conduct of the malefactor [was] not ordinarily inherent in the sexual misconduct itself." *State v. Garcia, supra,* 288 Or at 421 n 8. The court concluded:

> "In summary, the legislature said there may be a separate conviction and sentence for kidnapping only when it is not incidental to another crime, and it may be found not to be incidental if the defendant had the *intent to interfere substantially with the victim's personal liberty.*" 288 Or at 423. (Emphasis supplied.)

---

[1] Defendant was sentenced to a maximum term of 20 years imprisonment for the rape conviction and to a maximum term of 10 years imprisonment for second degree kidnapping conviction, to be served concurrently with the rape sentence.

In *Garcia,* the defendant had forced the victim at knifepoint to walk approximately two blocks and raped her during an episode lasting about 40 minutes. In *Dorsey,* the defendant had held the victim as he drove eight miles out of town to a remote site, where he raped her. In *Little,* the defendant had driven the victim at knifepoint past her home to an area near a freeway, where he raped her. In all of these cases the kidnapping was held to be *not* merely incidental to the rape.

■ Here, defendant threatened the victim with what he claimed was a gun. He forced her into his car and drove her two miles away, where he allegedly raped her. A trier of fact could find that defendant had the requisite intent to interfere substantially with the victim's liberty. The kidnapping was not merely incidental to the rape. Accordingly, the trial court did not err in denying acquittal on the kidnapping charge and did not err in sentencing defendant separately for rape and kidnapping.

Reversed and remanded for new trial.