Argued and submitted October 13, 1982, reversed and remanded for new trial February 16, reconsideration denied April 29, petition for review denied September 7, 1983 (295 Or 617)

## STATE OF OREGON,
*Respondent,*

*v.*

## MICHAEL JAMES ELSTAD,
*Appellant.*

(29500; CA A24659)

658 P2d 552

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Virginia L. Linder, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

Gillette, P. J., concurring.

## WARDEN, J.

Defendant appeals his conviction for burglary in the first degree. He assigns as error the trial court's denial of his motion to suppress a written confession, claiming that a prior, unconstitutionally obtained confession "let the cat out of the bag," *United States v. Bayer,* 331 US 532, 540, 67 S Ct 1394, 91 L Ed 1654 (1947), and tainted the subsequent confession, under the "fruit of the poisonous tree" doctrine of *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963). We reverse.

On December 17, 1981, officers McAllister and Burke went to defendant's home with a warrant for his arrest. His mother admitted the officers and directed them to defendant's bedroom. Both officers stayed in the bedroom while defendant dressed. He was not told that he was under arrest. Burke then took him to the living room, while McAllister went into the kitchen with defendant's mother. Burke testified:

> "I sat down with [the defendant] and I asked him if he was aware of why Detective McAllister and myself were there to talk with him. He stated no, he had no idea why we were there. I then asked him if he knew a person by the name of Gross, and he said yes, he did, and also added that he heard that there was a robbery at the Gross house. And at that point I told [the defendant] that I felt he was involved in that, and he looked at me and stated, 'Yes, I was there.' "[1]

After this conversation, defendant was placed in the officers' patrol car for transportation to the Polk County jail. On their way, the officers responded to a report of a robbery, and defendant was transported to the jail in another police car. Forty-five minutes to an hour elapsed before McAllister and Burke arrived at the jail. Defendant was then informed for the first time of his rights under *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966). He gave an oral confession; it was typewritten by McAllister as it was spoken. He then signed the two-page confession which is the subject of his motion to suppress. Burke, McAllister and defendant were the only persons present when the confession was given.

---

[1] On cross-examination, Burke testified, "And I asked what he knew about the burglary, and he said, 'I was there.' "

The state does not dispute that the statement elicited from defendant at his home was inadmissible. Our inquiry here is whether there was a sufficient break in the stream of events between that inadmissible statement and the written confession to insulate the latter statement from the effect of what went before. *Clewis v. Texas,* 386 US 707, 87 S Ct 1338, 18 L Ed 2d 423 (1967); *State v. Mendacino,* 288 Or 231, 603 P2d 1376 (1979).

In *State v. Hibdon,* 57 Or App 509, 645 P2d 580 (1982), police also were in possession of an arrest warrant when they went to the defendant's girlfriend's house to arrest him. Suspecting that the defendant was hiding in the bedroom, an officer entered the room and flushed him from beneath the bed by pointing a gun at the bed and ordering him to come out. The defendant gave inculpatory responses to a question asked by the officer. He was then placed in a patrol car, read his *Miranda* rights and transported to the police station, where, after being advised of his *Miranda* rights a second time, he confessed. The full confession was made less than one hour after the prior statement. We stated:

> "The taint of the police misconduct in questioning defendant before administering the *Miranda* warnings was not removed by the brief span of time and the change of his location from [defendant's girlfriend's] apartment to the police station, notwithstanding the fact that he had received *Miranda* warnings in the meantime." 57 Or App at 512.

We held that the confession should have been suppressed.

The state here attempts to distinguish *Hibdon* in two ways. First, it describes the circumstances leading up to the initial confession in *Hibdon* as involving "significant elements of threat and compulsion" in that the officer pointed his gun at the defendant and told him to "come out or be shot," whereas this case involves no such threat or compulsion but "just a procedural failure to give *Miranda* warnings." The state argues that the absence of actual compulsion should be a factor in determining if there was a sufficient break in the stream of events to insulate a defendant psychologically from the effect of the coercive circumstances. The state's argument derives some support

from *State v. Mendacino, supra.* There, the initial confession was inadmissible because the interrogating officers persisted in questioning the defendant after he indicated that he did not want to talk and wanted a lawyer, circumstances that, the court noted, made the initial confession "partake more of actual coercion." 288 Or at 238.

Conceding that the flagrancy of police misconduct is a factor in another "fruit of the poisonous tree" context[2] and that it may be a factor in the analysis of the "total circumstances of each case" that we must make in these successive interrogation cases, *State v. Mendacino, supra,* 288 Or at 238, we disagree that it is a factor of sufficient significance to distinguish this case from *Hibdon.* The state's analysis denigrates the importance of *Miranda v. Arizona, supra,* in which the court held that the warnings were mandatory in order to protect Fifth Amendment rights against "the compulsion inherent in custodial surroundings." 384 US at 458. Regardless of the absence of actual compulsion, the coercive impact of the unconstitutionally obtained statement remains, because in a defendant's mind it has sealed his fate. It is this impact that must be dissipated in order to make a subsequent confession admissible. In determining whether it has been dissipated, lapse of time and change of place from the original surroundings are the most important considerations. *See Westover v. United States,* 384 US 436, 496, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

In *State v. Mendacino, supra,* the court stated that an interval of seventy-two hours might be adequate insulation, but was not in that case, given other factors, including that the defendant remained in custody without an opportunity to consult an attorney and that the same two officers who had elicited the original confessions were present at the subsequent interrogation. Both of those considerations are present in this case. For these reasons, we do not find the absence of actual threats and compulsion sufficient to distinguish this case from *Hibdon.*

The state also argues that the nature of the disclosure in the initial statement distinguishes this case from

---

[2] In determining whether a confession is the fruit of a prior illegal *arrest,* the flagrancy of the police misconduct in making the arrest is a factor to be considered. *Brown v. Illinois,* 422 US 590, 603-604, 95 S Ct 2254, 45 L Ed 2d 416 (1975).

*Hibdon.* Here, the state suggests, the cat was only "peeking" out of the bag, *State v. Foster,* 40 Or App 635, 640, 596 P2d 572 (1979), *rev'd* 288 Or 649, 607 P2d 173 (1980), whereas in *Hibdon* the defendant in his initial statement admitted to theft by possession of stolen property, if not to the burglary for which he was being arrested. Here, when the officer inquired about a burglary at a certain house, defendant merely stated, "I was there." That statement may not literally have admitted complicity in the burglary, but given the manner in which the questioning officer put the inquiry, indicating that he felt defendant was "involved" in the burglary, defendant's affirmative response was significantly inculpatory. The cat was sufficiently out of the bag to exert a coercive impact on defendant's later admissions. It was error not to suppress the typewritten confession.[3]

Reversed and remanded for new trial.

**GILLETTE, P. J.,** concurring.

I join in the opinion of the court, which I believe is compelled by *State v. Wolfe,* 61 Or App 409, 657 P2d 227 (1983) and *State v. Mendacino,* 288 Or 231, 603 P2d 1376 (1979). I write separately to add two observations.

1. I regret the introduction of the metaphor of an escaping feline ("the cat is out of the bag") into our legal lexicon. I recognize that it is a piece of literary cleverness from relatively ancient judicial roots *(United States v. Bayer,* 331 US 532, 540, 67 S Ct 1394, 91 L Ed 1654 (1947)), but mere age does not make it worthy. The fact is that we have used the metaphor as a short-hand description of a particular psychological phenomenon—a prisoner's lowered resistance to confessing a second time, once a first confession has been given—to the extent that we now seem to think that this phenomenon must occur in every case. The metaphor now rules where analysis was once sovereign. However, the overthrow occurred too long ago for a dissent to serve any purpose now, so I concur.

---

[3] Defendant also assigns error to the denial of his motion to strike certain evidence as uncorroborated testimony of an accomplice. Uncorroborated accomplice testimony is not inadmissible. It is only insufficient by itself to support a conviction. ORS 136.440(1). The trial court therefore correctly denied defendant's motion to strike. Defendant does not assign as error the trial court's denial of his motion for a judgment of acquittal.

■ Law enforcement authorities should take a hint: delaying service of a warrant in order to get a defendant to confess may seem cute or even useful, but it is counter-productive. The present state of the law seems to be that a defendant in such a case is best served if he responds to prearrest questioning, because doing so immunizes him from later effectively waiving his *Miranda* rights. A number of confessions are going to be lost from the bag, right along with the cat, unless this police practice is changed.