Argued and submitted December 9, 1991; resubmitted In Banc September 9, convictions affirmed; remanded for resentencing October 21, 1992

STATE OF OREGON,
*Respondent,*

*v.*

PHILLIP DALE DETERMANN,
*Appellant.*

(90-09-35071; CA A69626)

839 P2d 748

Laura Graser, Portland, argued the cause and filed the brief for appellant.

Ann Kelley, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

DEITS, J.

Durham, J., dissenting.

## DEITS, J.

Defendant appeals his convictions on two counts of first degree sodomy, ORS 163.405, first degree rape, ORS 163.375, first degree burglary, ORS 164.225, first degree kidnapping, ORS 163.235, two counts of first degree robbery, ORS 164.415, and two counts of menacing. ORS 163.190. He also assigns error to the trial court's imposition of sentence. We affirm the convictions but remand for resentencing.

During the course of robbing a sandwich store, defendant kidnapped, raped and sodomized one of the store's employees. Police responded to a silent alarm and arrested him at the scene. Detective Lind interviewed him approximately two hours after the arrest. Lind read defendant the *Miranda* rights, and he signed an acknowledgment. He told Lind that he wanted to talk to an attorney before he answered any questions. Before talking to his attorney, however, he was shown a picture of the knife used against the employees. Defendant then asked if he could be photographed with the knife. Lind encouraged him to make a statement, telling him that he had an opportunity to "tell his side of the story." Defendant responded, "You guys got me" and refused further discussion. Defendant moved to suppress the statements that he made after requesting counsel. The state conceded that suppression was proper, and the trial court suppressed the evidence.

At trial, defense counsel announced his intention to present an intoxication defense. He told the court that he would question Lind about certain statements that defendant made after invoking his right to counsel. The prosecution responded that, if defense counsel did that, it would question Lind about other statements that defendant made. Over defendant's objection, the trial court ruled that, if defendant presented evidence of any of the statements that he made after invoking his right to counsel, the state could ask about other statements that he made at that time.

On direct examination, defense counsel questioned Lind about defendant's request to be photographed with the knife. On cross-examination, the prosecution asked Lind about defendant's statement, "You guys got me," his

invocation of his right to counsel and his refusal to talk to the police after invoking that right:

"Q Now, Detective, after you read him those rights, how did he respond to those rights?

"A He indicated that he felt he should talk to an attorney before he answered any questions.

"Q Okay. Now, did you have some discussion with him after he told you that he felt he should consult an attorney?

"A Yes.

"Q Okay. And it was during that time, was it not, that he made some mention about the knife relating to this case?

"A Yes, he did.

"* * * * *

"Q Now, Detective, you said that he did speak with you and told you something further about this incident other than just his comments about the knife. And what did he tell you?

"A Well, after he had asked me the questions about the knife, I felt that he — he might be willing to talk to me at that point, he might have changed his mind. So I reminded him that the interview was his opportunity to tell me his side of the story, if he wanted. He didn't have to talk to me if he didn't want to; I reminded him of that.

"And at that point, he said, quote, 'You guys got me,' end quote, and then I said, 'Well, do you want to make a statement?' and he repeated again that he did not, he wished to talk to his attorney. So I didn't take a full statement.

"* * * * *

"Q Or did you inquire any further?

"A I — he — he sort of clammed up on me, didn't want to talk any further."

After Lind's testimony, the trial judge said that the prosecution had gone beyond the scope of cross-examination that he had anticipated. Nonetheless, when defendant moved for a mistrial, the court denied it.

■   Defendant first argues that the trial court erred in allowing the prosecution to cross-examine Lind concerning the statements that defendant made after invoking his right to counsel. Article I, section 12, of the Oregon Constitution

requires that "[u]pon request for counsel, questioning not only 'should' but must cease." *State v. Isom*, 306 Or 587, 593, 761 P2d 524 (1988). Statements made after a request for counsel are generally inadmissible. An exception to this general rule exists, however, when the defendant "opens the door." As the court said in *State v. Miranda*, 309 Or 121, 128, 786 P2d 155, *cert den* 498 US 879 (1990):

> "A defendant's own inquiry on direct examination into the contents of otherwise inadmissible statements opens the door to further inquiry on cross-examination relating to those same statements."

■    *State v. Miranda* held that, by introducing "selected portions" of his otherwise inadmissible conversations with officers, the defendant had opened the door to other questions concerning those statements.[1] 309 Or at 129. Here, defendant introduced his statements about wanting to be photographed with the knife to support his contention that he was so intoxicated that he could not have had the requisite intent to commit the alleged crimes. In response to that, the state asked about other statements that defendant made at that time, including his comment, "You guys got me." The state's inquiry was relevant to rebut defendant's contention, because it also related to his state of mind at that time. The trial court did not err in allowing the state to cross-examine Lind concerning the statements.

■    Defendant's second assignment of error is that the trial court erred in failing to grant his motion for mistrial on the ground that the state improperly brought out that defendant had invoked his right to counsel and to remain silent. As the state concedes, that was impermissible. *See Wainwright v. Greenfield*, 474 US 284, 106 S Ct 634, 88 L Ed 2d 623 (1986). The state contends, however, that the error does not require reversal. It first argues that "[d]efendant failed to object when this evidence was introduced and defendant's motion for a mistrial was extremely untimely." To be timely, a motion for mistrial must be made when the allegedly

---

[1] The dissent reads *Miranda* as allowing cross-examination only on the specific statements that defendant brought out on direct examination. However, in *Miranda*, as in this case, the state was allowed to bring out numerous other statements that were part of the same conversation with the police. As the court emphasized in *Miranda*, a defendant may not bring up only "selected portions" of his conversation with the police and still be protected from cross-examination.

improper statements were made. *State v. Walton*, 311 Or 223, 248, 809 P2d 81 (1991). Defendant's counsel had noted a continuing objection to the prosecutor's line of cross-examination of Lind. Although defense counsel did not object to any specific statements about defendant's invocation of the right to remain silent or his refusal to speak, his continuing objection was sufficient to preserve the claim of error.

■ The state also argues that the error does not require reversal, because it did not affect the verdict. A defendant's conviction may still be affirmed, in spite of an error at trial affecting the defendant's federal constitutional rights if the state proves beyond a reasonable doubt that the error did not affect the verdict. *State v. Walton, supra*, 311 Or at 231.

■ Defendant admitted committing the crimes. The only contested issue was whether he had the required intent when he committed them. He argued that he did not, because he was intoxicated. However, the evidence was overwhelming that, despite his drinking, he had the required intent. Although some of the witnesses testified that they smelled alcohol on his breath, none thought that he was intoxicated. Defendant's actions during the incident show that he was not so inebriated that he was unable to make decisions. He took money from the cash register, held two employees at knife-point, ordered them to undress and raped and sodomized one of them. In view of that evidence, we conclude that the evidence of defendant's invocation of his right to counsel two hours after his arrest did not change the jury's assessment of his capacity at the time of the crimes. We conclude that there was substantial and compelling evidence of defendant's guilt and that the state proved, beyond a reasonable doubt, that any error did not affect the verdict.

Finally, defendant assigns error to the sentence imposed. It designated one of the sodomy convictions as the primary offense and departed from the presumptive sentence after concluding that defendant was a dangerous offender. Under grid block 10A, the presumptive sentence range for first degree sodomy is 121 to 130 months. The trial court said that defendant's presumptive sentence was 125 months. It imposed an upward departure sentence of 360 months on the basis of defendant's being a dangerous offender. It then

imposed the presumptive sentences on defendant's other convictions, all to run consecutively.

Defendant first argues that the trial court erred in sentencing him, because it imposed a determinate sentence of 30 years as a dangerous offender rather than an indeterminate sentence. However, the trial court did not say that the dangerous offender sentence was being imposed as a determinate sentence and, under ORS 161.725, ORS 161.735 and ORS 161.737, all dangerous offender sentences are, by law, indeterminate. As we explained in *State v. Serheinko*, 111 Or App 604, 607, 826 P2d 114 (1992):

> "The imposition of an indeterminate sentence up to 30 years as a dangerous offender provides a statutory exception to the determinate sentences authorized under the guidelines. However, the exception does not extend to the minimum term of incarceration that a defendant must serve before consideration for parole. * * * [U]nder ORS 161.737(2), a sentencing court must indicate the presumptive term which a defendant would have served had a dangerous offender sentence not been imposed. When the presumptive sentence has been served, a defendant automatically becomes eligible for consideration for parole."

The dangerous offender sentence imposed is an indeterminate sentence.

■■ Defendant also argues that the total incarceration term of his dangerous offender sentence combined with his other consecutive sentences exceeds the maximum allowable under OAR 253-12-020(2) and OAR 253-08-007.[2] That is

---

[2] OAR 253-08-007 provides, in part:

"(3)    When a departure sentence is imposed for any individual offense sentenced consecutively, the incarceration term of that departure sentence shall not exceed twice the maximum presumptive incarceration term that may be imposed for that offense as provided in OAR 253-12-020(2)(a)."

OAR 253-12-020 provides, in part:

"(2)(a) Subject to the provisions of subsection (b) of this section, the presumptive incarceration term of the consecutive sentences is the sum of:

"(A)    The presumptive incarceration term for the primary offense, as defined in OAR 253-03-001(17); and

"(B)    Up to the maximum incarceration term indicated in the Criminal History I Column for each additional offense imposed consecutively.

"(b)    The total incarceration term of the consecutive sentences, including the incarceration term for the primary offense, shall not exceed twice the

true. Dangerous offender sentencing is subject to the limitations set by the sentencing guidelines and the "400 percent rule." If a person is sentenced as a dangerous offender, the total incarceration term of consecutive sentences "cannot exceed four times the presumptive incarceration term for the primary offense." *State v. Davis*, 113 Or App 118, 122, 830 P2d 620 (1992). In this case, the primary offense was sodomy. The presumptive term was set at 125 months. Four times that is 500 months, 48 months less than defendant's term as set by the trial court. Accordingly, the trial court improperly sentenced defendant.

Defendant also argues that the trial court failed to make the requisite findings to support consecutive sentences. ORS 137.123; *State v. Racicot*, 106 Or App 557, 809 P2d 726 (1991). Defendant did not preserve his argument below. We decline to address it. *State v. Crane*, 109 Or App 217, 817 P2d 771 (1991).

Convictions affirmed; remanded for resentencing.

**DURHAM, J.,** dissenting.

The majority recites, and then ignores, Oregon law on the admissibility of statements obtained from defendant after he invoked his right to counsel. Because this court cannot deviate from the admissibility standards for such statements announced by the Oregon Supreme Court, I dissent.

The Supreme Court repeatedly has held that, once a defendant requests to speak with a lawyer, questioning by police "not only 'should' but must cease." *State v. Isom*, 306 Or 587, 593, 761 P2d 524 (1988). Incriminating statements and confessions obtained after a request for counsel are inadmissible, because they "partake more of actual coercion." *State v. Mendacino*, 288 Or 231, 238, 603 P2d 1376 (1979). *Isom* requires that such statements be suppressed:

> "[A]ll citizens, including criminal defendants, have constitutional rights, and the state may not prove, over objection, any crime with unconstitutionally obtained evidence. The defendant was entitled under the Oregon Constitution to have a

---

maximum presumptive incarceration term of the primary sentence except by departure as provided by OAR 253-08-007."

lawyer present at the time of his out-of-court interrogation by the police. He unequivocally exercised that right by telling the police that he did not want to make any statement without his lawyer present. The police purposely disregarded that request and thereby intentionally violated defendant's constitutional right to counsel. The notion that police can continue to interrogate a person in violation of his state constitutional right to counsel and his rights against self-incrimination is pure fiction. Police officers have a duty to uphold the constitution of this state and may not intentionally violate a person's constitutional rights without serious sanctions. They have an absolute obligation to cease all questioning once the request for counsel has been made. Because defendant's statements were made after a request for counsel and were induced by continued questioning by the police, they were obtained in violation of Article I, section 12, of the Oregon Constitution and should have been suppressed by the trial court." 306 Or at 595.

In *State v. Miranda*, 309 Or 121, 786 P2d 155, *cert den* 498 US 879 (1990), the Supreme Court recognized an exception to the *Isom* rule: When a defendant "opens the door" by testifying about the contents of an otherwise inadmissible statement, he may be cross-examined about that statement. The opinion makes it clear — twice — that the scope of cross-examination must be confined only to the statement that the defendant "opened up":

"A defendant's own inquiry on direct examination into the contents of otherwise inadmissible statements opens the door to further inquiry on cross-examination *relating to those same statements*.

"* * * * *

"By affirmatively introducing selected portions of his conversations with the officers, defendant invited further inquiry on cross-examination and he could not limit the state's cross-examination of him *concerning those statements*. The trial court did not err in this respect. The evidence was invited, not shunned, as in the case of *State v. Isom*, 306 Or 587, 761 P2d 524 (1988)." 309 Or at 128. (Emphasis supplied.)

The state's cross-examination in *Miranda* was properly confined to details about the statements to police that the defendant had "opened up" during his direct examination.

Here, defendant "opened up" his statement to police that he wanted to be photographed with the knife. However, over his objection, and to the expressed surprise of the trial judge, the prosecution introduced additional statements that defendant had never opened up, including his repeated request to speak to a lawyer and his statement, "You guys got me."

The majority makes no pretense that the state's questioning was confined to his statement about the knife, as *Miranda* requires. Instead, it would expand the *Miranda* exception and allow the state to introduce *any* uncounseled statements, including statements never brought up by defendant, if they are "relevant to rebut" the defendant's probable motive in opening the door on one statement. 115 Or App at 631. That violates *Miranda's* requirement that the state's questioning must be confined to the "same statements" brought up by a defendant.[1] It is inconceivable to me that the court was careless in selecting its terminology for the rule that it announced — twice — in *Miranda*. Our duty is to follow the rule, not to evade it.

The majority acknowledges, and the state concedes, that the prosecution improperly introduced evidence that defendant had invoked his right to counsel and to remain silent. The majority excuses that violation as harmless error. If that were the only error, I could agree with the majority's harmless error analysis. However, the trial court also permitted the state to introduce other statements by defendant to the police, even though he did not "open the door" to those statements. As a result, Officer Lind testified that, after defendant had requested an opportunity to speak to his attorney, he said, "You guys got me," and then again asked for an attorney and "clammed up." The first statement can be construed, among other possible interpretations, as an admission of criminal responsibility. That inference is

---

[1] The majority reads *Miranda* as permitting the state to cross-examine, not only about the statement the defendant opened up, but also on any other statements "that were part of the same conversation with the police." 115 Or App at 631 n 1. That is a far cry from *Miranda's* "same statement" rule. *Miranda* permitted the prosecution to expose the details of the statements that the defendant disclosed, not to expose all of his uncounseled statements because they occurred in the same conversation with police. Unlike in *Miranda*, the prosecution here did not confine itself to rebutting the credibility of the statement that defendant opened up.

strengthened by Lind's comment that defendant "clammed up," which suggests that defendant suddenly recognized the detrimental effect of his statement.

I could not conclude that that error was harmless. *State v. Miller*, 300 Or 203, 220, 709 P2d 225 (1985), *cert den* 475 US 1141 (1986), says:

> "OEC 103(1) provides: 'Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.' According to the Legislative Commentary to OEC 103(1), appellate courts are required to affirm the trial court, notwithstanding evidential error, whenever there is: (1) substantial and convincing evidence of guilt in a criminal case, and (2) little, if any, likelihood that the error affected the verdict."

In *State v. Walton*, 311 Or 223, 230, 809 P2d 81 (1991), the court held that it was harmless error to admit the defendant's unwarned statements claiming a false name, denying his true name and denying that he knew an accomplice, Abbott. The court concluded that those statements had no impact on the trial, because the court received other statements in evidence that defendant had admitted his true name and had admitted knowing Abbott.

Nothing in the record allows us to say that the introduction of the challenged evidence did not influence the verdict. The jury was required to determine, among other things, whether defendant acted as a result of intoxication. His admission and Lind's other testimony about his statements could have been what induced jurors to convict him, even though there was other substantial evidence that he was guilty. Nothing in the record effectively negated or minimized the damaging effect of the inadmissible statements. That distinguishes this case from *State v. Walton, supra.*

I dissent. Joseph, C. J., and De Muniz, J., join in this dissent.