(Kennedy, J.,
concurring in the judgment))).
The Seventh Circuit aptly summarized the state of the law regarding two confessions with an intervening Miranda waiver as follows:
What emerges from the split opinions in Seibert is this: at least as to deliberate two-step interrogations in which Miranda warnings are intentionally withheld until after the suspect confesses, the central voluntariness inquiry of El-stad has been replaced by a presumptive rule of exclusion, subject to a multifactor test for change in time, place, and circumstances from the first statement to the second. According to the plurality, the multifactor test — timing and location of interrogations, continuity of police personnel, overlapping content of statements, etc. — measures the “effectiveness” of midstream Miranda warnings and applies in all cases involving sequential unwarned and warned admissions. In Justice Kennedy’s view, however, an inquiry into change in time and circumstances between the prewarning and postwarning statements — what he called “curative steps” — -is necessary only in cases involving the deliberate use of a two-step interrogation strategy calculated to evade the requirements of Miranda. Justice Kennedy thus provided a fifth vote to depart from Elstad, but only where the police set out deliberately to withhold Miranda warnings until after a confession has been secured. Where the initial violation of Miranda was pot part of a deliberate strategy to undermine the warnings, Elstad appears to have survived Seibert.
Stewart, 388 F.3d at 1090;[34] see also United States v. Mashburn, 406 F.3d 303, 309 (4th Cir.2005) (“The admissibility of post- *442 warning statements is governed by Elstad unless the deliberate ‘question-first’ strategy is employed. If that strategy is deliberately employed, postwarning statements related to the substance of prewarning statements must be excluded unless curative measures are taken before the post-warning statements are made.” (citation and footnote omitted)).
As the majority explains in footnote nine, there is a split among the federal circuits regarding the applicability of Justice Kennedy’s concurrence in Seibert. However, no such split exists in the State of Florida. This Court as well as four district courts of appeal have all held that Justice Kennedy’s concurrence in Seibert is the law in Florida. Stated otherwise, prior to this decision, this Court and the First, Second, Third, and Fourth District Courts of Appeal have all applied the standard enunciated in Justice Kennedy’s concurrence in Seibert, not the standard enunciated in the plurality’s opinion. Davis, 990 So.2d at 465-66 (quoting and applying Justice Kennedy’s concurrence in Seibert and recognizing that “Justice Kennedy stated that he would apply a narrower test than the plurality”); Tengbergen, 9 So.3d at 735 (“Florida courts have heretofore applied Justice Kennedy’s rule [in Sei-bert ], as it represents the narrower view.”); Jump, 983 So.2d at 728 (applying Justice Kennedy’s concurrence in Sei-bert — not the plurality opinion — because, “[a]s our sister courts have recognized, Justice Kennedy’s concurring opinion in Seibert offers the narrowest grounds”); Lebron, 979 So.2d at 1096 (“Justice Kennedy’s opinion concurring in the judgment is the dispositive opinion. Addressing the exact issue now before us, Justice Kennedy stated that ‘it would be extravagant to treat the presence of one statement that cannot be admitted under Miranda as sufficient reason to prohibit subsequent statements preceded by a proper warning.’ ” (quoting Seibert, 542 U.S. at 620, 124 S.Ct. 2601 (Kennedy, J., concurring in the judgment))); Pitts, 936 So.2d at 1136 (“[T]he holding of Seibert should be viewed as the position taken by Justice Kennedy, which articulates the ‘narrowest grounds’ for the judgment of the Court.”). Consequently, the majority opinion is receding from this Court’s precedent as well as overruling the four district courts’ decisions by improperly mixing together the standard in Elstad, Justice Kennedy’s standard in Seibeit, and the plurality’s standard in Seibert.[35]
In this case, because of the trial court’s factual finding that the withholding of Mi *443 randa warnings was not deliberate, Elstad applies. See Mashburn, 406 F.3d at 309 (“Here, the district court found no evidence that the agents’ failure to convey Miranda warnings to Mashburn was deliberate or intentional. Therefore, the admissibility of Mashburn’s statements is governed by Elstad.” (citations omitted)). Applying Elstad’s voluntariness inquiry, I believe this case is analogous to Davis v. State, 859 So.2d 465 (Fla.2003).
In Davis, this Court applied Elstad and held that a second confession given after Miranda warnings was voluntary and therefore admissible. Davis, 859 So.2d at 471-72. The defendant admitted that he killed the victim in an initial discussion with officers. Id. at 471. Then, an officer administered Miranda warnings, and Davis signed a written waiver. Id. Thereafter, Davis gave a recorded confession. Id. In ruling that the recorded confession was admissible, this Court stressed that the officers “carefully read Davis his Miranda rights, explaining each section of the waiver form, clearly reading aloud and explaining each right, and confirming after each right that Davis understood.” Id. at 472. This Court also noted that Davis signed a written waiver and that the officers did not attempt to downplay the Miranda warnings. Id.
As in Davis, here, Detective Waldron carefully read Ross’ Miranda rights to him, asked if he understood those rights, obtained a written waiver, and then asked if Ross wished to talk to him. Ross stated that he did.[36] Only then did the interview proceed. “In these circumstances, a careful and thorough administration of Miranda warnings serves to cure the condition that rendered the unwarned statement inadmissible.” Elstad, 470 U.S. at 310-11, 105 S.Ct. 1285. Therefore, like the second confession in Davis, Ross’ post-Miranda confession was voluntary and admissible. See id. at 311, 105 S.Ct. 1285 (“The warning conveys the relevant information and thereafter the suspect’s choice whether to exercise his privilege to remain silent should ordinarily be viewed *444 as an ‘act of free will.’ ” (quoting Wong Sun v. United States, 371 U.S. 471, 486, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963))).
III. Conclusion
I would defer to the trial court’s factual finding that the officers in this case did not deliberately withhold the Miranda warnings because this finding is supported by competent substantial evidence. As a result, I would employ the Elstad standard, which applies to nondeliberate delays in Miranda warnings. See Davis, 990 So.2d at 466 (holding that we apply Elstad unless officers used “the question-first method ‘in a calculated way to undermine the Miranda warning.’” (quoting Seibert, 542 U.S. at 622, 124 S.Ct. 2601 (Kennedy, J., concurring in the judgment))). Under a proper application of the Elstad standard, Ross’ post-Miranda confession is admissible. The trial court did not err in denying Ross’ motion to suppress it.
Accordingly, I respectfully dissent.
CANADY and PERRY, JJ., concur.

. The Seventh Circuit has yet to decide exactly how it will apply Seibert. In its most recent opinion on the subject, the Seventh Circuit decided that the statements at issue would be admissible under any possible rule from Seibert. United States v. Heron, 564 *442 F.3d 879, 885 (7th Cir.2009) ("We have no need here to resolve once and for all what rule or rules governing two-step interrogations can be distilled from Seibert. This is because Heron’s May 11 statements would be admissible under any test one might extract.”). However, the Seventh Circuit in Heron repeated its prior statement that Elstad survives Seibert and again deferred to the trial court's finding of fact that the delay in Miranda warnings was not deliberate. Id. at 885-86.

. The majority cites the following language from Elstad as its support that Elstad requires an examination of the same factors as the plurality in Seibert would require: "When a prior statement is actually coerced, the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators all bear on whether that coercion has carried over into the second confession.” Majority op. at 420 (quoting Elstad, 470 U.S. at 310, 105 S.Ct. 1285 (citing Westover v. United States, decided together with Miranda, 384 U.S. at 494, 86 S.Ct. 1602)). However, this language does not apply every time there are two confessions with an intervening Miranda waiver. Rather, this language referencing Westover only applies after a determination that the pre-Miranda statements were coerced, which was not the case in Elstad. As the United Stales Supreme Court explained in Elstad,
[tjhe failure of police to administer Miranda warnings does not mean that the statements received have actually been coerced, but only that courts will presume the privilege *443 against compulsory self-incrimination has not been intelligently exercised. See New York v. Quarles, 467 U.S., at 654, and n. 5[ 104 S.Ct. 2626]; Miranda v. Arizona, supra, at 457[, 86 S.Ct. 1602]. Of the courts that have considered whether a properly warned confession must be suppressed because it was preceded by an unwarned but clearly voluntary admission, the majority have explicitly or implicitly recognized that West-over’s requirement of a break in the stream of events is inapposite. In these circumstances, a careful and thorough administration of Miranda warnings serves to cure the condition that rendered the unwarned statement inadmissible. The warning conveys the relevant information and thereafter the suspect's choice whether to exercise his privilege to remain silent should ordinarily be viewed as an “act of free will.” Wong Sun v. United States, 371 U.S., at 486[, 83 S.Ct. 407],
Elstad, 470 U.S. at 310-11, 105 S.Ct. 1285 (footnote omitted). Indeed, in Elstad, the United States Supreme Court reversed the Oregon court's holding that, despite the fact that the pre-Miranda statements were un-coerced, "lapse of time, and change of place from the original surroundings are the most important considerations" in determining the admissibility of the post-Miranda statements. Id. at 303, 105 S.Ct. 1285 (quoting State v. Elstad, 61 Or.App. 673, 658 P.2d 552, 554 (1983), rev’d, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), which cited Westover v. United States, 384 U.S. 436, 496, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)).

. Contrary to the majority's characterization of this conversation on pages 51 and 55, it is clear from the transcript that Ross was not attempting to invoke his right to remain silent. Ross initially stated, "I can’t tell you anything different." (Emphasis added.) He did not say that he would not talk. Instead, after he was directly asked, “You’re indicating that you want to talk to me; correct?” Ross responded, "Yes." Ross then signed the written waiver.