Argued and submitted September 13, 1985, affirmed April 30, 1986

In the Matter of James Edwin Gray,
a Child.

STATE ex rel JUVENILE DEPARTMENT
OF WASHINGTON COUNTY,
*Respondent,*

*v.*

JAMES EDWIN GRAY,
*Appellant.*

(J-12-618; CA A34330)

718 P2d 773

Timothy P. Alexander, Beaverton, argued the cause for appellant. With him on the brief was Myatt, Bell & Alexander, Beaverton.

Stephen F. Peifer, Assistant Attorney General, Salem,

argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Jonathan H. Fussner, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, Warden and Newman, Judges.

NEWMAN, J.

NEWMAN, J.

The juvenile appeals an order of the juvenile court that he was within its jurisdiction for conduct, which if committed by an adult, constituted manslaughter in the first degree. ORS 163.118; ORS 419.476(1)(a). His principal contention is that the court erred in not suppressing incriminating statements that he made to police. He argues that without those statements the state's evidence is insufficient to prove beyond a reasonable doubt that he committed the act. Our review is *de novo,* ORS 419.561(4); *State ex rel Juv. Dept. v. Qutub,* 75 Or App 298, 300, 706 P2d 962, *rev den* 300 Or 332 (1985), and we affirm.

On August 4, 1984, Horton, a juvenile, was severely beaten in an area near S.W. Front Avenue in Portland known as "hobo camp." The state claimed that the juvenile, age 14, and two others, Howell and Kelly, were present and participated in the beating. The three and a resident of the camp, Foreman, then carried Horton to another location, where he died. On August 5, the police contacted the juvenile regarding Horton's death and took him to the police station. There, Detective Hefley questioned him. *After* the juvenile told him "his entire story as to what happened," Hefley read him the *Miranda* rights. Hefley then conducted a tape recorded interview, during which the juvenile made incriminating statements. After the interview, he consented to a search of his clothing. The police obtained a hotel room for the juvenile and released him. The subsequent examination of the clothing, primarily his shoes, produced evidence linking the juvenile to the death.

The juvenile moved to suppress all the statements that he made to Hefley and the evidence that the police obtained in the search of his clothing. The court granted the motion as to the juvenile's pre-*Miranda* statements, but denied it as to the other evidence. At the jurisdictional hearing, Howell, a participant in the beating, testified that the juvenile had struck and kicked the victim during the assault. Foreman's testimony also implicated the juvenile. The state also offered and the court admitted the juvenile's post-*Miranda* statements and the evidence procured in the search of his clothing. The court found that the juvenile had committed an act of manslaughter in the first degree and,

accordingly, held that he was within the jurisdiction of the court.

In his first assignment, the juvenile asserts that the court erred in not suppressing the statements that he made to Hefley during the tape recorded interview. He argues that, although he waived his *Miranda* rights before the interview, his statements were tainted by his previous unwarned confession and so were inadmissible under the Fifth Amendment. The state responds that the juvenile was not in custody at the time and, accordingly, that the court's only error was in suppressing the pre-*Miranda* statements. Alternatively, the state argues that, under the Fifth Amendment, the post-*Miranda* statements were not tainted.

■ We need not decide whether the juvenile was in custody during his interview with Hefley, because the state's alternative contention is correct. The juvenile does not argue that either his pre-*Miranda* or post-*Miranda* statements were involuntary or that his waiver of his *Miranda* rights, which preceded the tape recorded interview, was not "knowing and intelligent." Rather, citing *State v. Elstad,* 61 Or App 673, 658 P2d 552, *rev den* 295 Or 617 (1983), and *State v. Hibdon,* 57 Or App 509, 645 P2d 580 (1982), he argues that the "coercive impact of the unconstitutionally obtained statement remain[ed], because in the juvenile's' mind it sealed his fate." *State v. Elstad, supra,* 61 Or App at 677. The United States Supreme Court, however, has limited the scope of the cases on which the juvenile relies to support his argument under the Fifth Amendment. *Oregon v. Elstad,* 470 US 298, 105 S Ct 1285, 84 L Ed 2d 222 (1985). His unwarned confession did not taint his subsequent waiver of his *Miranda* rights under the Fifth Amendment. *Oregon v. Elstad, supra,* 470 US at 318. The court correctly denied the juvenile's motion to suppress the statements.[1]

In his second assignment, the juvenile asserts that the court erred in denying his motion to suppress physical evidence obtained as a result of the consent search of his clothing, arguing that his consent was involuntary. In his third and fourth assignments, he argues that Foreman and

---

[1] Because the juvenile did not raise Article I, section 12, of the Oregon Constitution as a basis for suppressing his statements, we do not consider it.

Howell were accomplices and that, without the post-*Miranda* statements and physical evidence to corroborate their testimony, the evidence was insufficient to prove that the juvenile committed manslaughter in the first degree. *See* ORS 136.440.

■ Even if the second assignment is well taken and the court should have suppressed the physical evidence, the juvenile's post-*Miranda* statements to Hefley corroborate the testimony of Foreman and Howell. On *de novo* review, we find that the juvenile committed acts which would constitute manslaughter in the first degree and, accordingly, is within the jurisdiction of the juvenile court.

Affirmed.