Argued and submitted November 18, 1988, resubmitted In Banc September 7,
affirmed September 13, 1989, reconsideration allowed by opinion February 14, 1990
See 100 Or App 430 (1990)

In the Matter of
Lindsen Lee Charles, a Male Child.

STATE ex rel JUVENILE DEPARTMENT
OF LANE COUNTY,
*Respondent,*

*v.*

CHARLES,
*Appellant.*

(80-434; CA A46410)

779 P2d 1075

John I. Mehringer, Eugene, argued the cause and filed the brief for appellant.

Frank Gruber, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

NEWMAN, J.

Joseph, C. J., dissenting.

## NEWMAN, J.

The child, age 13, appeals an order of the juvenile court that he is within its jurisdiction because of conduct that, if done by an adult, would constitute intentional murder. He assigns as error that the court denied his motion to suppress a confession that he made after the police gave him *Miranda* warnings. He argues that he did not make a knowing, intelligent and voluntary waiver of his rights before he confessed. He also assigns as error that, at the suppression hearing, the court admitted testimony by police about previous encounters with the child. We review *de novo.* ORS 419.561(4); *State ex rel Juv. Dept. v. Gray,* 79 Or App 216, 218, 718 P2d 773 (1986); *State ex rel Juv. Dept. v. Qutub,* 75 Or App 298, 300, 706 P2d 962, *rev den* 300 Or 332 (1985). We affirm.

On June 3, 1987, after the victim's body was found in the Sycan Ford area, police arrested the child and took him to the Klamath County Sheriff's office. An officer explained to the child that he wanted to question him about "the event" at Sycan Ford. Without giving *Miranda* warnings, the officer began to interrogate him. About fifteen minutes later, a second officer arrived. The first officer testified that the child appeared frightened and appeared to believe that one of the officers would hit him when he arrived at the sheriff's office. The officer testified that, shortly after the second officer arrived, they drove the child to a park about one mile from the sheriff's office to calm him and walked to a spot hidden from the road. The officers kept other people away while they questioned the child for another 45 minutes, again without giving him *Miranda* warnings. They testified that the child seemed to calm down at the park. During that questioning, the child confessed for the first time to the killing. He then became upset and asked to return to the sheriff's office. The officers drove him back to the office.

At the sheriff's office, the officers asked the child if he would make a taped statement, and he agreed. While the two officers taped the interrogation, the child sat between them. The officers testified that the child became relaxed and put his feet up on the desk during the interrogation, that they made no threats toward or promises to him and did not deny him food or drink and that he did not appear to be under the influence of drugs or alcohol. The interrogation lasted about

40 minutes. Without receiving *Miranda* warnings, the child confessed for the second time.

The police then asked the child to make diagrams of the death site, and he did so. The record does not disclose how much time the child took to make the drawings. While he drew the diagrams or shortly thereafter, the officers realized that neither of them had given him *Miranda* warnings. Within an hour after the conclusion of the first taped interrogation, the officers started a second taped interrogation. They first read *Miranda* warnings to the child:

> "[OFFICER]: OK, before I start I'll go ahead and advise you of your rights, and we're going to go through the incident that occurred down at the Sycan Ford, OK?
>
> "[THE CHILD]: All right.
>
> "[OFFICER]: OK, my duty as a police officer is to inform you of your rights. You have the right to remain silent, anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you are being questioned, if, or you're being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before being questioned if you wish. If you do give a statement, you can stop talking anytime you wish. Do you understand these rights?
>
> "[THE CHILD]: Yeah.
>
> "[OFFICER]: Having these rights in mind, do you want to discuss the incident that —
>
> "[THE CHILD]: Huh?
>
> "[OFFICER]: Having these rights in mind, do you want to go ahead and talk to me?
>
> "[THE CHILD]: Uh, yeah."

After the officers recommenced questioning the child, one of them stopped to have him sign the advice of rights card. The card contained the same warnings that the officer had just read to him. It also contained the question, "Do you understand these rights?" The child answered, "Yes." The card also contained the question, "Having these rights in mind, do you wish to talk to us?" The child answered, "Yes, ah, ya." The child and the officer then both signed the card. During the subsequent interrogation of about a half an hour, the child confessed the third time.

The child moved to suppress the evidence of any statements that he had made to the police, asserting that the state obtained them in violation of his Fifth and Sixth Amendment rights. The controversy centers on the third confession. At the suppression hearing, over the child's objection, the court admitted testimony of several police officers who had a connection with this case to show, as the state argued below, that the child "has had multiple encounters with the police and * * * previously had his *Miranda* rights explained to him and he has previously made choices necessary with regard to whether he was going to exercise his *Miranda* rights or not." During some, but not all, of the encounters, the police had given him *Miranda* warnings. During one encounter, when he did receive warnings, he asked for an attorney, and the officer ceased to question him.

The court denied the motion to suppress. It reasoned that it must look at the totality of the circumstances, including whether the unwarned confessions were voluntarily given, to determine whether the child knowingly, intelligently and voluntarily waived his rights when he gave his third confession. It ruled that the child's first two confessions, although unwarned, were voluntary. It also found that, before the third confession, the police gave *Miranda* warnings and asked him if he understood them and that he replied that he did. It found that the child had exercised his *Miranda* rights in the past and had then understood the warnings. It found:

> "So, I make a finding that the Miranda warning was made, that he had sufficient understanding of the warning, he knew the topic or nature of the investigation, he knew what the officer was asking him about, he was a youngster with sufficient background and experience to make a decision on his own behalf. I find that there were no inducements, no promises, no threats, no expectations of leniency."

It concluded:

> "So I find that, considering the total circumstances, that the waiver was knowing, was intelligent and it was voluntary and with respect to the tape number 2 [the third confession], the Motion to Suppress is denied."

■   The child assigns as error that, at the suppression hearing, the court admitted the police officers' testimony about his previous encounters with the police. He asserts that

the ruling violates OEC 404(3). That rule, however, does not apply to

> "[t]he determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under [OEC 104]." OEC 101(4)(a).

The evidence that the state presented of the child's earlier encounters with the police when he did receive *Miranda* warnings was relevant to the issue of the child's knowing, intelligent and voluntary waiver of his *Miranda* rights before the third confession, and the court could admit it. Evidence of previous interrogations during which the child did *not* receive *Miranda* warnings was irrelevant. On *de novo* review, we disregard that evidence.

On the merits of the denial of the suppression motion, the child argues, as he did below, that, under the Fifth Amendment, considering the totality of the circumstances, he did not knowingly, intelligently and voluntarily waive his *Miranda* rights. *Miranda v. Arizona,* 384 US 436, 444, 86 S Ct 1602, 16 L Ed 2d 694 (1966); *see also Johnson v. Zerbst,* 304 US 458, 58 S Ct 1019, 82 L Ed 1461 (1938). Although he based his motion to suppress on the Fifth and Sixth Amendments, he does not raise the Sixth Amendment on appeal. He also does not argue that, under the Fifth Amendment, the failure of the police to give him *Miranda* warnings before the first two confessions made his third confession inadmissible as a matter of law *or* that the first two confessions or his drawings were involuntarily made. The issue is whether, under the Fifth Amendment, the state proved that, when he gave his third confession, he waived his *Miranda* rights knowingly, intelligently and voluntarily.

Under the Fifth Amendment, as the child recognizes, the failure of the police to give him *Miranda* warnings before his first two voluntary confessions does not render the third confession inadmissible purely as a matter of law. In *Oregon v. Elstad,* 470 US 298, 314, 105 S Ct 1285, 84 L Ed 2d 222 (1985), the Supreme Court held that

> "absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned confession does not warrant a presumption of compulsion."

On the other hand, that the police warned the child before the third confession does not mean that his waiver of rights was knowing, intelligent and voluntary as a matter of law. Rather, we must examine the totality of the circumstances, including the entire course of police conduct. *See Oregon v. Elstad, supra,* 470 US at 318; *Schneckloth v. Bustamonte,* 412 US 218, 226, 93 S Ct 2041, 36 L Ed 2d 854 (1973); *United States v. Wauneka,* 770 F2d 1434, 1440 (1985).

*Elstad* permits us to consider, as part of the totality of the circumstances, that the child had made earlier voluntary confessions and drawings, that he knew of their existence and that he made them without *Miranda* warnings. As the court stated in *Elstad:*

"A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement *ordinarily* should suffice to remove the conditions that precluded admission of the earlier statement. In such circumstances the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights." 470 US at 314. (Emphasis supplied.)

If a properly warned confession follows an unwarned but clearly voluntary confession,

"a careful and thorough administration of *Miranda* warnings serves to cure the condition that rendered the unwarned statement inadmissible. The warning conveys the relevant information and thereafter the suspect's choice whether to exercise his privilege to remain silent should *ordinarily* be viewed as an 'act of free will.' " 470 US at 310. (Emphasis supplied.)

This case, however, may not be an "ordinary" one. The child was 13 years old. The interrogations before the challenged waiver, although they were made during the daytime, had taken place while the child was held in custody for almost four hours. During that entire period, he was isolated from persons other than the police. He was first interrogated in the sheriff's office, then in the park and then back in the sheriff's office. The police testified that he appeared to relax before the first confession but that, after he made it, he again became upset and asked to return to the sheriff's office. He again appeared to relax before the second confession. The testimony does indicate that, at certain times in the interviews, the child was frightened and tense. Although the record

states that he is able to read, is an "eager student" and a "bright youngster," it also shows that he has had no formal education except for recent short periods of tutoring that a school district had provided.

On the other hand, the officers made no threats or promises to the child, did not deprive him of food, drink or sleep and did not deceive him. They clearly explained to him the nature of the investigation. It also appears that he replied after hearing the *Miranda* warnings that he understood them and wished to answer the officers' questions nonetheless, and he also signed the advice of rights card. The record contains no reference to the child being upset, tense or frightened when he orally waived his *Miranda* rights or when he signed the rights card. The trial judge had the opportunity to hear the child's testimony and to observe his demeanor in court. He stated that he found that the child had "sufficient understanding of the warning, he knew the topic or nature of the investigation, he knew what the officer was asking him about." We agree with those conclusions.

Finally, the child does not assert that he involuntarily made the drawings after the second confession. His oral and written waivers of *Miranda* rights were made less than one hour after he made the drawings. If those drawings were voluntarily made, the record does not disclose any intervening facts that would justify a conclusion that his waiver of *Miranda* rights was involuntary.

Under the totality of the circumstances, we conclude that the state has carried its burden to prove that the child knowingly, intelligently and voluntarily waived his rights. The court did not err when it denied the motion to suppress the third confession.

Affirmed.

**JOSEPH, C. J.,** dissenting.

Because this case comes to us on a dispositional order in a juvenile court, our law and fact review is *de novo*. ORS 419.561(4). Because I believe that the voluntariness of the child's first two statements is in issue, that those statements were involuntary as a matter of law and that, first, the original failure to give *Miranda* warnings and, second, the manner in

which they were eventually given rendered inadmissible the third statement, I dissent.

This appeal relates entirely to the *Jackson/Denno* hearing held on the child's motion to suppress his statements. The majority points out, and makes use of the fact to the child's disadvantage, that he does not "challenge the admissibility" of the first two statements or their voluntariness. It is true that the child does not make any particular point about those statements but, in context, that is understandable, for, even under *Oregon v. Elstad,* 470 US 298, 105 S Ct 1285, 84 L Ed 2d 222 (1985), those statements are *presumed* to be involuntary, and the burden rests on the state to establish their voluntariness. The state makes no effort whatsoever, as I read the briefs, to sustain the *constitutional* voluntariness of the first two statements. In fact, the state accepts that they were inadmissible; their inadmissibility has to be a result of their having been made in the absence of *Miranda* warnings.

Therefore, unlike the majority, I believe that the voluntariness of the first two statements is in issue, and I would conclude that, considerations of *Miranda* warnings aside, they were not in fact voluntary, because the police conduct created an inherently coercive situation. The majority has reasonably fairly set out the facts, twice at least. I cannot accept the too easy conclusion of voluntariness. If the statements were not voluntary, I gather that the majority would agree that the third statement would not be admissible. *Oregon v. Elstad, supra,* would command that result.

Even if the first two statements were voluntary, in fact or in the constitutional sense of being made in the absence of deliberately coercive or improper tactics by the interrogators, I would not permit the state to use any of the child's statements. This case is so far from *Elstad* on its facts that it is of very limited authority. Elstad was arrested in his home bedroom on a warrant charging the burglary for which he was subsequently tried. He was asked just two questions: Did he know why the police were talking to him, to which he gave a negative response; and did he know the neighboring family whose home was the subject of the burglary, to which he replied affirmatively and volunteered that he knew that the home had been burglarized. The police officer then said, "We

think you were involved," and Elstad said, "Yes, I was there." He was then taken to the police station and given the *Miranda* warnings, after which he made a full and complete statement of his participation in the crime.

We reversed Elstad's conviction, *State v. Elstad,* 61 Or App 673, 658 P2d 252, *rev den* 295 Or 617 (1983), on the basis, feline metaphors aside, that, under *State v. Mendacino,* 288 Or 231, 603 P2d 1376 (1979), and *State v. Hibdon,* 57 Or App 509, 645 P2d 580 (1982), there was insufficient time between the statement made in the bedroom and the station house confession to permit the "dissipation" of the effect of the unlawful questioning in the bedroom. Although our conclusion in that case seemed to be a non-constitutional mixed finding of fact and law, the Supreme Court of the United States treated the case as involving only the question of whether the failure to give *Miranda* warnings rendered presumptively involuntary any later statement made after the giving of the warnings. Of course, the majority of that court held against any such presumption.

In my view, given our *de novo* review, I would not put any judicial stamp of approval on what happened here. Unlike the situation in *Elstad,* which the United States Supreme Court characterized as involving a failure to give *Miranda* warnings merely because of an "oversight," I cannot in good conscience give the police the benefit of the doubt here. I will not re-recite the facts. I am satisfied that the police cannot constitutionally treat a juvenile the way the child was treated here and cure their blunders simply by telling the child that he is going to receive warnings of his rights and then "we're going to go through the incident that occurred down at the Sycan Ford area, OK?" In the circumstances, I would hold that that so-called administration of warnings was wholly ineffective in fact and in law. The police had placed the child in an impossible position by their illegal conduct.

I dissent.

Buttler, Warren and Edmonds, JJ., join in this dissent.