Argued and submitted December 23, 1994, reversed and remanded
February 15, 1995

# STATE OF OREGON,
*Appellant,*

*v.*

# JAMES CHARLES ROWE,
*Respondent.*

## (C91-06-32835; CA A83415)

889 P2d 1329

Kaye E. Sunderland, Assistant Attorney General, argued the cause for appellant. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Dan Maloney, Deputy Public Defender, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendant was indicted for manufacture, delivery and possession of a controlled substance. ORS 475.992. The state appeals the trial court's order granting defendant's motion to suppress. The issue is whether defendant's rights against self-incrimination under Article I, section 12, and the Fifth Amendment were violated when, after his arrest and release from custody, defendant contacted the police and, in the course of that contact, made incriminating statements regarding his activities in the charged crimes. We reverse.

■ In reviewing the trial court's decision, we are bound by the trial court's findings of historical fact, but "we assess anew whether the facts suffice to meet constitutional standards." *State v. Stevens*, 311 Or 119, 135, 806 P2d 92 (1991). On April 30, 1991, police officers executed a valid search warrant of a trailer and found evidence of a methamphetamine drug laboratory. The officers learned from witnesses in the area and the trailer's owner that defendant and his girlfriend were operating the drug laboratory. The police arrested defendant and his girlfriend the day after the search. At that time, they advised defendant of his *Miranda* rights, which he said he understood. When they questioned him about his knowledge of the laboratory, he said that he would "have to talk to [his] attorney first." As a result of that statement, the police stopped questioning him.

When defendant's girlfriend was interviewed after her arrest, she confessed to her involvement in the drug operation and implicated defendant as well. She told the interviewing officer, Anderson, that she wanted to cooperate with the police. Anderson told her that the police were interested in her assistance, but that they would have to get the district attorney's approval first. Both defendant and his girlfriend were scheduled for a court appearance on June 4, 1991, and then released.

Anderson testified that defendant's girlfriend called him on several occasions after her release, stating that she wished to assist him and that defendant intended on assisting them as well. Anderson never suggested to her that she should convince defendant to cooperate. A few days after the arrest and while driving in his patrol car, Anderson saw

defendant at an intersection. Anderson's car window was down, and he said to defendant, "Hey, we haven't heard from you." Defendant replied that he planned on contacting Anderson.

■     Defendant called Anderson twice thereafter. During the second conversation, on May 14, 1991, defendant told Anderson that he wanted to work something out regarding his case. Anderson responded that he could not speak with defendant if defendant had an attorney, but defendant responded that he had not retained an attorney. Then Anderson explained that if defendant would meet with him, and if he could hear what information defendant had, and if the information was helpful, Anderson would try to get the district attorney's approval "to cut some kind of deal." Anderson also explained that he could make no promises regarding the prosecution of defendant. After defendant expressed concerns about meeting Anderson in a location where people he associated with might see them, they agreed to meet that evening at a restaurant.

That evening, Anderson and two other officers, all in plain clothes, met with defendant. Anderson first explained to defendant that they could not speak with him if he had an attorney, and defendant again responded that he did not have an attorney, and that he was there voluntarily. Neither Anderson nor the other officers readvised defendant of his *Miranda* rights. The officers explained the process of how defendant could become an informant, that they could make no promises, but that, in the past, they had been able to persuade the district attorney's office to reduce the charges when a defendant cooperated with them. Thereafter, according to Anderson, defendant began "basically giving us his resume," during the course of which he made incriminating statements regarding his involvement in the laboratory. He also provided names of individuals and locations involved in drug activity. At the end of the conversation, the officers told defendant that they would like to use him as an informant, based on the information he had given them. Defendant said he would go home and make a list of individuals and organizations that he knew were involved in illegal activity. Anderson told defendant to contact him when defendant had completed

the information. However, defendant made no further contact with Anderson and, as a result, the original prosecution against him continued.

Pretrial, defendant moved to have evidence of the statements he made at the restaurant suppressed. He argued that he believed his statements to be confidential, and that he should have been readvised of his *Miranda* rights before giving the statements. The trial court granted the motion, ruling:

"I would find it was [defendant's] choice to call the officer. I would find, as a matter of law, that at that point in time, he did waive his right to an attorney. I'm satisfied legally he did that.

"* * * [T]he sticking points are really three: One is was this an implied waiver of his previously invoked fifth amendment right? Was it a knowing and voluntary waiver; and then this new little wrinkle, which is, he is not in custody for the traditional thing, but he's sort of someone that has been bailed out.

"I think you would find that the standards for custody apply * * *.

"* * * * *

"I feel a reasonable time has elapsed. I feel that in order for this waiver of the fifth amendment right to be knowing and voluntarily [*sic*], he needed to be reminded of his right to remain silent just as the officer appropriately insured that he had not, in fact, obtained counsel and did not want counsel present at the meeting."

On appeal, the parties agree that defendant voluntarily and intelligently waived his right to counsel at his meeting with the officers. Thus, the issue before us is whether defendant's Article I, section 12, and Fifth Amendment rights were violated. The state argues that defendant was not in custody nor were there compelling circumstances akin to custody and, therefore, it was not necessary to readvise him of his right against self-incrimination.

Article I, section 12, of the Oregon Constitution provides:

"No person shall be * * * compelled in any criminal prosecution to testify against himself."

Likewise, the Fifth Amendment to the United States Constitution provides:

"No person * * * shall be compelled in any criminal case to be a witness against himself."

■ Under section 12, a person is entitled to *Miranda* warnings before questioning when he or she is in "full custody," *State v. Magee*, 304 Or 261, 265, 744 P2d 250 (1987), or

"in circumstances that, although they do not rise to the level of full custody, create a 'setting which judges would and officers should recognize to be "compelling." ' " *State v. Smith*, 310 Or 1, 7, 791 P2d 836 (1990) (quoting *State v. Magee, supra*).

In *State v. Smith, supra*, the court found it significant that the defendant met the detectives in familiar surroundings in an alcohol therapy facility from which the defendant could come and go freely. The court also noted that, although the defendant was clearly questioned as a suspect, that fact "does not inherently create a 'compelling' setting for Oregon constitutional purposes." 310 Or at 11. It concluded that the defendant was not in a compelling situation that required the giving of *Miranda* warnings as a predicate to the statement being deemed voluntary.

Likewise, in *State ex rel Juv. Dept. v. Loredo*, 125 Or App 390, 865 P2d 1312 (1993), we held that a police officer's interview with a child in the school principal's office regarding the child's involvement in a rape, was not a "compelling" situation, when the officer was dressed in plain clothes and the officer explained that the child was not under arrest, that he could leave when he wanted to, and that he did not have to speak with him. We said that whether the situation was compelling

"depends on whether a reasonable person in child's position—that is, a child of similar age, knowledge and experience, placed in a similar environment—would have felt required to stay and answer all of [the officer's] questions." 125 Or App at 394.

Here, defendant was neither in a custodial nor a "compelling" situation. The trial court found that it was defendant's choice to call Anderson. The officers wore plain clothes and met defendant at a restaurant. Defendant does

not suggest that he felt compelled by the police to go to the restaurant. On the contrary, he testified that he was motivated to help his girlfriend work out a deal with the police. The officers never detained him at the restaurant; in fact, they told him that whether a deal with the district attorney's office could be made depended on whether he continued to stay in contact with them. We conclude that there were no "compelling circumstances" at the restaurant that would have required the police to readvise defendant of his *Miranda* rights under section 12.

Under the Fifth Amendment,

> "*Miranda* warnings must be given when a person is 'in custody,' *i.e.*, when a person's freedom has been 'significantly restrained,' even if the person is in his or her own home or other surroundings." *State v. Smith, supra,* 310 Or at 8.

In *Oregon v. Mathiason,* 429 US 492, 97 S Ct 711, 50 L Ed 2d 714 (1977), the Supreme Court held that the defendant was "not in custody 'or otherwise deprived of his freedom of action in any significant way,' " when the defendant voluntarily came to the police station to discuss a burglary and was immediately informed that he was not under arrest. 429 US at 495. The Court found insignificant for purposes of determining whether he was in a custodial situation the fact that the interrogation took place in the state police offices behind closed doors, that the officer informed the defendant that he was a suspect and the authorities had evidence implicating him in the crime, and that the defendant was a parolee under supervision. 429 US at 494. The Court explained:

> "Such a noncustodial situation is not converted to one in which Miranda applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a 'coercive environment.' Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person

is one whom the police suspect. Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' It was *that* sort of coercive environment *to which* Miranda by its terms was made applicable, and to which it is limited." 429 US at 495. (Emphasis in original.)

In this case, the judge considered defendant to be in "custody" because he was released on bail. However, defendant told the officers that he was there voluntarily. In that sense, defendant was no more in the custody of the police than was the defendant in *Mathiason*. Furthermore, like the defendant in *Mathiason*, defendant was fully aware that he was free to leave the restaurant, a public place, at any time. We hold that, under the circumstances, neither Anderson nor the officers accompanying him were required to readvise defendant of his *Miranda* rights under the Fifth Amendment.

■    Nevertheless, defendant argues that his statements to the officers were made in violation of his rights against self-incrimination because, based on the nature of his meeting with the officers, he believed his statements to be confidential. In Oregon, before a confession can be received in evidence,

"the state must show that it was voluntarily given, that is, made without inducement through fear or promises, direct or implied." *State v. Mendacino*, 288 Or 231, 235, 603 P2d 1376 (1979).

Defendant argues that, because he met with the officers in order to make a deal regarding becoming a confidential informant for the police, and because he was not readvised of his *Miranda* rights, he assumed that his conversation with the officers would be confidential. The trial court's findings of historical fact include the following:

"The officers made no specific promises to him either about his pending case or about whether he could qualify as an informant. They did explain to him how people have worked off their cases in the past wherein they would be, subsequent to working, permitted to plead to one or some of their charges and get probation, but that the officer could not make any promises about that.

"* * * * *

"In response to the question regarding questions about self-incrimination, Officer Anderson said that he assumed that Mr. Rowe was aware of that; that Mr. Rowe did not come out and say anything about it, nor did the officer; that there was no specific discussion wherein the officer said 'I promise you, I'm not going to tell any of these people that you're talking,' but he felt that Mr. Rowe was aware of that; that the conversation was confidential to that extent * * *."

There is evidence to support those findings. Nothing in them directly or impliedly shows that defendant's confession was induced by a promise to make a deal. Anderson expressly told defendant that he could make no promises regarding the prosecution of defendant. It is clear that defendant was aware of how to invoke his constitutional rights, as demonstrated by his actions at the time of arrest. Defendant's belief that his statements would be confidential was not objectively reasonable under the circumstances. *See Minnesota v. Murphy*, 465 US 420, 438, 104 S Ct 1136, 79 L Ed 2d 409 (1984); *State v. Capwell*, 64 Or App 710, 717, 669 P2d 808 (1983).

In the light of the fact that defendant was not in a custodial or compelling situation, that the police offered no promises regarding the pending prosecution, that defendant was aware of his right against self-incrimination, and that there is no evidence that defendant's will was overborne, we hold that his statements were voluntarily given under Article I, section 12, and the Fifth Amendment. Consequently, the trial court erred in granting defendant's motion to suppress.

Reversed and remanded.