No. 195　　　　　　March 18, 2026　　　　　　721

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LACIE COLLEEN CLARK,
*Defendant-Appellant.*

Marion County Circuit Court
21CR55628; A183077

Sean E. Armstrong, Judge.

Argued and submitted December 19, 2025.

Kali Montague, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Jonathan N. Schildt, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Remanded for resentencing; otherwise affirmed.

**TOOKEY, P. J.**

Defendant appeals a judgment of conviction for first-degree arson, ORS 164.325, challenging the trial court's imposition of a 90-month mandatory prison sentence under ORS 137.700(2)(b)(A), as disproportionate under Article I, section 16, of the Oregon Constitution and the Eighth Amendment to the United States Constitution.[1] We conclude that the trial court erred in imposing the sentence, because the court mistakenly concluded that it could not consider whether defendant's mental health attributes justified a reduced sentence. We therefore remand for resentencing.

Defendant was convicted after a jury trial of first-degree arson based on evidence that she started a fire in her bedroom, which was in the garage of the house that defendant shared with her father. Defendant's father, brother, and a friend were in the house at the time. The fire was quickly extinguished and there were no injuries. The record at trial included evidence that defendant suffers from many severe mental health conditions. As a result of mental illness, defendant has blackouts and, at trial, she stated that she did not remember having started the fire. However, she did not seek to be determined guilty except for insanity (GEI), and the jury found her guilty of the offense.

As noted, defendant's conviction is subject to a mandatory prison sentence of 90 months under ORS 137.700(2)(b)(a). At sentencing, relying on *State v. Rodriguez/Buck*, 347 Or 46, 58, 217 P3d 659 (2009), defendant argued that, in light of her severe mental health conditions, the 90-month mandatory sentence was unconstitutional as applied to her. Defendant urged a sentence of probation rather than prison.

The sentencing court had before it and considered four psychiatric reports describing defendant's mental illnesses and mental health conditions. The court stated that "if it could consider defendant's mental illnesses in a proportionality challenge, it would have imposed a probation sentence and ordered mental health services and drug treatment." But the court concluded that our opinion in *State v.*

---

[1] Article I, section 16, provides in part that "all penalties shall be proportioned to the offense."

*Gonzalez*, 326 Or App 587, 534 P3d 289 (2023), *aff'd*, 373 Or 248, 564 P3d 109 (2024) (*Gonzalez I*), did not permit consideration of defendant's mental illnesses at sentencing, but only allowed consideration of intellectual disability, which defendant did not have. The court therefore imposed the 90-month mandatory sentence.[2]

On appeal, defendant contends that the sentencing court erred in concluding that it was prohibited from considering defendant's mental illnesses in determining whether the 90-month sentence was disproportionate as applied to defendant. In reviewing the court's decision concerning the constitutionality of the sentence, we are bound by the court's findings of historical facts, but we "assess anew whether the facts suffice to meet constitutional standards." *State v. Rowe*, 133 Or App 41, 43, 889 P2d 1329 (1995) (citing *State v. Stevens*, 311 Or 119, 135, 806 P2d 92 (1991)). We review for legal error whether a defendant's sentence is disproportionate to the offense. *State v. Ryan*, 361 Or 602, 614-15, 396 P3d 867 (2017).

As noted, the sentencing court cited our opinion in *Gonzalez I* as standing for the rule that only an intellectual disability may be considered in evaluating the proportionality of a sentence. At the time of defendant's sentence, review of our opinion in *Gonzalez I* was pending in the Supreme Court. After defendant's sentencing, the Supreme Court affirmed our opinion. *State v. Gonzalez*, 373 Or 248, 564 P3d 109 (2025) (*Gonzalez II*).

On appeal here, the parties argue about the extent to which the Supreme Court's opinion in *Gonzalez II* adhered to or clarified our opinion in *Gonzalez I*, on which the trial court had relied. Defendant contends that the Supreme Court's opinion reflects a gloss that was not apparent from our opinion, explaining that, in certain circumstances, a person's mental health conditions other than intellectual disability may be considered in a proportionality analysis.

---

[2] The court explained:

"[I]f I was permitted to take into account your specific mental health conditions and efforts since *** this case got underway, uh, I would. It should be a case where you should be on probation and get the benefit of mental health services and drug treatment. But that's not how the law works, so I am constrained to impose 90 months[.]"

Defendant asserts that her mental illness constitutes such a circumstance.

The state responds that the Supreme Court adhered to and did not modify our opinion in *Gonzalez I* that the circumstances under which a person's mental health condition may be considered by a court in a proportionality analysis are rare, and limited to situations where there is a statutory or other basis for concluding that there is a societal standard that eschews treating persons with the defendant's mental health attributes the same as adults who do not have those attributes. In the state's view, that standard is not met here.

The proportionality issue before us is quite narrow: In light of the Supreme Court's opinion in *Gonzalez II*, did the sentencing court err in concluding that it could not consider defendant's mental illness in determining whether the sentence of 90 months' incarceration was disproportionate? And if the court did err, is the error reversible? The parties' arguments necessitate a close examination of both *Gonzalez* opinions to determine whether the trial court erred and, if so, exactly under what circumstance a person's mental health conditions may be considered by a court in a proportionality analysis at sentencing.

In *Gonzalez*, the defendant, attempting suicide, set fire to her apartment building, injuring several people and causing extensive damage. *Gonzalez I*, 326 Or App at 598. The defendant was convicted of first-degree arson and third-degree assault. The trial court acquitted the defendant of five counts of attempted first-degree murder and one count of second-degree assault, finding that the defendant did not intend to harm or kill the other residents of the apartment when she set the fire. *Id.*

At sentencing, the defendant argued that the mandatory 90-month minimum sentence for first-degree arson required by ORS 137.700(2)(b)(A) would be unconstitutionally disproportionate as applied to her, in violation of Article I, section 16, of the Oregon Constitution and the Eighth and Fourteenth Amendments to the United States Constitution. The sentencing court agreed. Citing *State v. Sanderlin*, 276 Or App 574, 575-77, 368 P3d 74 (2016), the

court reasoned that it could consider mitigating facts in assessing the defendant's moral culpability. The court concluded that, under the totality of the circumstances, including the defendant's "psychological paradigm," her adverse life circumstances, and her remorse, applying the 90-month mandatory minimum sentence would be unconstitutionally disproportionate under Article I, section 16. *Gonzalez I*, 326 Or App at 597. Thus, the court sentenced the defendant to 60 months' probation. *Id.* at 598.

On the state's appeal, we reversed. Citing Article I, section 15, of the Oregon Constitution ("Laws for the punishment of crime shall be founded on these principles: protection of society, personal responsibility, accountability for one's actions and reformation"), we stated that "a reasonable sentencing court could conclude that on the circumstances present here, the 90-month sentence might not be the best way to punish defendant while promoting her reformation." *Id*. But we explained that, although the many circumstances cited by the sentencing court could weigh in favor of leniency *if* the court's sentencing determination was discretionary, the legislature did not take that approach, instead imposing a mandatory sentence of 90 months for conduct constituting first-degree arson, "no matter what an individual's circumstances may be." *Id*. at 600.

We then considered whether courts are permitted to consider those circumstances in applying the proportionality analysis required by Article I, section 16, as construed in *Rodriguez/Buck*, which holds that the application of a legislatively specified penalty violates Article I, section 16, only if the penalty "is so disproportionate, when compared to the offense, so as to 'shock the moral sense' of reasonable people." *Gonzalez I*, 326 Or App at 590 (quoting *Rodriguez/ Buck*, 347 Or at 58). That standard, we said, is one that will rarely be satisfied. *Id*. at 590. That is because, "in general, determining the appropriate penalty or range of penalties for a crime is the province of the legislature (or the people, when acting in their legislative capacity)," and "'[i]t is not the role of this court to second-guess the legislature's determination of the penalty or range of penalties for a crime.'" *Id*. (quoting *Rodriguez/Buck*, 347 Or at 58). We cited the

three *Rodriguez/Buck* "guideposts" that bear on a court's determination of proportionality:

> "(1)   a comparison of the severity of the penalty and the gravity of the crime; (2)   a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant."

*Gonzalez I*, 326 Or App at 591 (quoting *Rodriguez/Buck*, 347 Or at 58). Those factors, we ultimately explained, did not support a conclusion that the sentence in that case was disproportionate. *Id*. at 604.

But the heart of our analysis in *Gonzalez I* was a discussion of the first *Rodriguez/Buck* factor—a comparison of the severity of the penalty and the gravity of the crime— in light of *State v. Ryan*, 361 Or 602, 614-15, 396 P3d 867 (2017), in which the court held that a person's disability that causes a person to have the intellectual ability of a child can be considered in determining proportionality. The court held in *Ryan* that a person's intellectual disability is relevant to proportionality, because it can affect an "offender's level of understanding of the nature and consequences of his or her conduct and ability to conform his or her behavior to the law." 361 Or at 621.

In describing *Ryan* in *Gonzalez I*, we stated:

> "As we understand *Ryan*, it carves out a narrow exception to allow for a court to consider whether an offender's intellectual disability, brain injury, or the like, effectively means that the offender's 'age-specific intellectual capacity fell below the minimum level of criminal responsibility for a child.' *Ryan*, 361 Or at 625-26. In those circumstances, a mandatory sentence is 'arguably unconstitutional' to the extent it results in an offender being treated more harshly than a child. *Id*. at 626."

*Gonzalez I*, 326 Or App at 600.

We noted the apparent rationale of *Ryan*

> "that the proportionality of a sentence for an adult offender with the intellectual capacity of a child should be assessed by comparing the presumptive sentence for an adult with the consequences, if any, that would be imposed on a child for the same conduct, in view of the legislative judgment

that children generally should be treated more leniently than adults. [*Ryan*, 361 Or] at 623-24."

*Gonzalez I*, 326 Or App at 601. We noted that our opinions both before and after *Ryan* had limited consideration of a person's personal characteristics for purposes of proportionality to those affecting intellectual capacity. *Id.*; *see also State v. Jeffery*, 329 Or App 380, 381, 541 P3d 909 (2023), *rev den*, 372 Or 290 (2024) ("[A]s we recently explained in [*Gonzalez I*, 326 Or App at 601], 'our cases before both and after *Ryan* have restricted the consideration of a defendant's personal characteristics to those affecting intellectual capacity.'"). In rejecting consideration of the defendant's mental health condition in *Gonzalez I*, we reasoned:

> "[I]n contrast with *Ryan*, defendant has not identified any statutory or other basis for concluding that there is a 'societal standard that eschews' treating persons with defendant's mental health attributes the same way that other adults are treated where, as here, they are found to have acted with the requisite culpable mental state, notwithstanding the presence of mental health issues."

326 Or App at 601 (quoting *Ryan*, 361 Or at 624). We concluded that,

> "[b]ecause such conditions—and their relationship to criminal culpability—are taken into account in the determination of guilt in the first instance, it is difficult to see how such conditions might then also be relevant, in the context of proportionality analysis under *Ryan*, to show that a defendant should be viewed as less culpable than other defendants found to have acted with the same culpable mental state, absent *the same sort of legislatively recognized societal standard* on which the *Ryan* court relied."

*Gonzalez I*, 326 Or App at 602 (emphasis added).

On review, the Supreme Court affirmed our opinion, reasoning that, although a person's mental health issues may generally bear on culpability, the defendant had failed to identify an objective basis for a societal standard recognizing reduced culpability for individuals *with that defendant's specific mental health attributes*, given the trial court's finding that the defendant had the requisite mental state and ability to appreciate the criminality of her conduct. *Gonzalez*

*II*, 373 Or at 268-69. The court reviewed *Rodriguez/Buck*, noting that it permits a court to consider "case-specific factors, such as characteristics of the defendant" in assessing the gravity of the offense for purposes of a constitutional proportionality analysis. *Gonzalez II*, 373 Or at 257.

The court then discussed *Ryan*. The court explained that, in *Ryan*, it had recognized the legislature's pronouncement on the age of criminal responsibility, ORS 161.290,[3] as relevant to the proportionality analysis, "'because it is objective evidence of a societal standard that eschews treating persons with the attributes of a pre-teen child as if they were normally abled adult offenders.'" *Gonzalez II*, 373 Or at 259 (quoting *Ryan*, 361 Or at 624). Thus, the court in *Ryan* concluded that the trial court had erred when, in comparing the gravity of the defendant's offense and the severity of the mandatory minimum sentence as required by the first *Rodriguez/Buck* factor, it had failed to sufficiently consider evidence that the defendant's "'age-specific intellectual capacity fell below the minimum level of criminal responsibility for a child.'" *Gonzalez II*, 373 Or at 259 (quoting *Ryan*, 361 Or at 625-26).

The court in *Gonzalez II* then proceeded to address the first *Rodriguez/Buck* factor—a comparison of the gravity of the defendant's offense and the severity of the mandatory minimum sentence—and whether the circumstances permitted consideration of the defendant's mental health attributes. The court first identified the elements of the offense of first-degree arson, ORS 164.325,[4] noting that the trial court had found that the state had established each element: the defendant had intentionally set a fire in the landing of her apartment building, had intentionally

---

[3] ORS 161.290(1) provides:

"A person who is tried as an adult in a court of criminal jurisdiction is not criminally responsible for any conduct which occurred when the person was under 12 years of age."

[4] As relevant here, a person commits first-degree arson if the person, by means of fire or explosion: (1) intentionally damages "protected property" of another or (2) intentionally damages "any property, whether the property of the person or the property of another person, and such act recklessly places another person in danger of physical injury or protected property of another in danger of damage[.]" ORS 164.325. "Protected property" is a structure, place, or thing customarily occupied by people. ORS 164.305(1).

damaged property, and had recklessly placed others in danger of physical injury. *Gonzalez II*, 373 Or at 271. The court identified the sentencing requirements for first-degree arson "as an external source of law that assists the court in determining whether imposition of that penalty would shock the moral sense of reasonable people." Based on the potential sentence for that offense,[5] the court stated that the legislature considered arson to be a very serious crime, particularly when it threatens serious physical injury. *Id*. at 262. The court also observed that first-degree arson is not less serious than other crimes carrying a 90-month mandatory minimum sentence under ORS 137.700. *Id*. at 263. The court thus concluded that, "apart from consideration of any personal characteristic of defendant that may have constitutional significance," a 90-month mandatory minimum sentence for the defendant's conduct would not "'shock the moral sense' of reasonable people." *Id*. (quoting *Rodriguez/Buck*, 347 Or at 58).

The Supreme Court then considered the defendant's assertion that her mental illness, like an intellectual disability, is a "characteristic of the defendant" that courts must consider under the first *Rodriguez/Buck* factor of a proportionality analysis under Article I, section 16. The court first agreed with the defendant's contention that *Ryan* did not hold that *no* characteristic other than intellectual disability may ever be relevant. *Gonzalez II*, 373 Or at 264. "In fact," the court stated, *Ryan* "neither embraced nor rejected the proposition that other personal characteristics may be relevant." *Id*. The court then concluded, however, that, contrary to the defendant's contention, the Court of Appeals opinion

---

[5] The court noted:

"Arson that threatens serious physical injury carries a presumptive sentence of up to 130 months in prison, depending on the person's criminal history—and that sentence is subject to doubling by departure. OAR 213-004-0001, App 1 (sentencing guidelines grid); OAR 213-008-0003 (durational departures shall not total more than double the maximum duration of a presumptive prison term). If a court finds substantial and compelling reasons to depart from the presumptive guidelines sentence range, even a person with no criminal history—such as defendant—could receive a sentence of 116-120 months in prison for arson that threatened serious physical injury. OAR 213-004-0001, App 1 (sentencing guidelines grid). In other words, had defendant been sentenced under the guidelines, she could have received an even longer sentence than the 90-month mandatory minimum sentence required by ORS 137.700."

in *Gonzalez I* had not erroneously interpreted *Ryan* to fore-close the possibility that "personal characteristics other than intellectual disability might, theoretically, be relevant to constitutional proportionality in a particular case." 373 Or at 265. Additionally, citing our observation in *Gonzalez I* that the defendant "had identified 'no statutory or other basis' for the societal standard of which defendant urges recognition," *Gonzalez I*, 326 Or App at 602, the Supreme Court rejected the defendant's contention that our opinion had held that *only* a statutory basis can establish a societal standard for consideration of personal characteristics. *Id*. at 266. The court stated:

> "Because of the legislature's primary role in determining the punishments for criminal conduct, it is appropriate that, in determining whether a societal standard exists that militates against imposing a punishment that would otherwise be required, courts will give great weight to the existence or absence of legislative enactments bearing on such a standard. However, that does not make the existence or absence of legislation dispositive in the analysis."

*Id*. The court explained, however:

> "[T]here must be some objective basis for allowing this court to discern a societal standard that requires treating persons with certain attributes differently for purposes of criminal culpability—even in the face of a legislative policy (such as a mandatory minimum sentence) that would otherwise require them to be punished the same as others."

*Id*. The court then addressed the defendant's contention that her mental illness was such an objective basis.

The court noted that mental illness is indeed recognized in Oregon as bearing on culpability, in the form of legislative enactments providing a defense for persons with a "qualifying mental disorder" who lack the capacity to appreciate the criminality of their conduct or conform their conduct to the requirements of the law, ORS 161.295, and in allowing a defendant to introduce evidence that they suffer from a "qualifying mental disorder" to show that they did not have the requisite intent to commit the charged offense. ORS 161.300.

In rejecting the defendant's argument that all mental illness, "of whatever nature," should be taken into account in addressing moral culpability at sentencing, the court stated:

> "[T]he term 'mental illness' encompasses a vast array of conditions, and defendant's assertion fails to account for either the range of disorders that may fall within the scope of that term or the different ways that such disorders may affect those who suffer from them."

*Gonzalez II*, 373 Or at 268. The court noted the defendant's acknowledgment that

> "not all mental illnesses will require a finding that a lengthy mandatory prison sentence is unconstitutional, because like people with intellectual disabilities, *not all people with mental illness will be so impaired as to fall within the range of mentally ill offenders who are deemed less morally culpable than those with no excuse.*"

*Id*. (Emphasis added.) Given that acknowledgment, the court stated that the question before it was whether the court "can identify a societal standard that requires a court to view a person with a *constellation of mental health attributes comparable to defendant's* as so much less culpable than people without those attributes that the mandatory 90-month sentence cannot constitutionally be imposed." *Id*. (emphasis added). The court then considered the defendant's mental health disorders, among them, depression, anxiety, adjustment disorder, and opioid-use disorder. *Id*. In rejecting the defendant's contention that those mental health disorders should be relied on to impose sentencing, the court held:

> "Defendant has not cited any evidence of a societal standard recognizing that people who suffer from those disorders—but who have the ability to form the requisite mental state and appreciate the gravity of their conduct—have reduced moral culpability for their criminal conduct to the extent that imposing the mandatory minimum sentence would violate Article I, section 16."

*Id*.

With that background in mind, we address the parties' arguments here. As noted, the sentencing court

explained that it could not consider defendant's mental illness in view of case law requiring that only intellectual disability at sentencing is relevant in determining whether defendant was less morally culpable. In light of the Supreme Court's statement in *Gonzalez II* that *Ryan* and our opinion in *Gonzalez I* did not hold that *no* condition other than intellectual disability may be considered in evaluating a defendant's moral culpability at sentencing, defendant contends that the trial court erred in its assumption that only intellectual disability may be considered.

We agree with defendant that, in light of the Supreme Court's opinion in *Gonzalez II*, the trial court's understanding of *Gonzalez I* that only intellectual disability could be considered, was not correct. The Supreme Court was clear that other mental health attributes can be considered, if there is "evidence of a societal standard recognizing that people who suffer from [the particular mental disorders]—but who have the ability to form the requisite mental state and appreciate the gravity of their conduct— have reduced moral culpability for their criminal conduct." *Gonzalez II*, 373 Or at 268. As a strategic matter, defendant here chose not to pursue a defense of GEI. ORS 131.300. In finding defendant guilty, the jury necessarily found that defendant had the ability to form the requisite mental state. Thus, the question for us is whether, despite that finding, the record includes objective evidence of a societal standard that recognizes, for purposes of sentencing, that people who suffer from the particular mental health attributes suffered by defendant have reduced moral culpability for their criminal conduct. *See State v. Lancaster*, 345 Or App 155, 158, 581 P3d 989 (2025) (applying standard).

It is undisputed that defendant suffers from a "qualifying mental disorder" under ORS 161.295 and ORS 161.300 that could support a finding of guilty except for insanity. ORS 161.295 provides:

"(1)   A person is guilty except for insanity if, at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law, and:

"(a)   But for a qualifying mental disorder, the person would have had such substantial capacity;

"(b)   A mental disorder other than a qualifying mental disorder is not the primary cause of the lack of substantial capacity; and

"(c)   The lack of substantial capacity is not the result of voluntary intoxication in combination with a qualifying mental disorder, a mental disorder other than a qualifying mental disorder or both.

"(2)   As used in chapter 743, Oregon Laws 1971, the term 'qualifying mental disorder' does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, nor does the term include any abnormality constituting solely a personality disorder."

ORS 161.300 provides:

"Evidence that the actor suffered from a qualifying mental disorder is admissible whenever it is relevant to the issue of whether the actor did or did not have the intent which is an element of the crime."

Defendant argues that, like ORS 161.290 (which states that a person under the age of 12 lacks criminal responsibility), on which the court relied in *Ryan*, ORS 161.295 and ORS 161.300 provide the necessary "societal standard" recognizing that persons who suffer from a qualifying mental disorder may not have the same moral culpability as a person who does not suffer from those conditions. Defendant contends that, as in *Ryan*, the existence of that societal standard requires a court to consider whether, based on the specific circumstances, a defendant suffering from a qualifying mental disorder has reduced moral culpability for their criminal conduct to the extent that imposing the mandatory minimum sentence would violate Article I, section 16.

We agree with defendant that ORS 131.295 and ORS 131.300 provide that objective societal standard. Through those statutes, the legislature has shown its intent to permit a defendant who suffers from a qualifying mental disorder to show that they are less criminally culpable. Whether or not a person chooses to invoke those statutes for purposes of establishing guilt except for insanity, we conclude that

ORS 131.295 and ORS 131.300 provide a societal standard that recognizes that a person who suffers from a qualifying mental disorder may be less morally culpable.

We note that the record includes evidence that defendant has severe mental illness, more severe than the mental illness suffered by the defendant in *Gonzalez*, with multiple diagnoses. The record also includes evidence that, as a result of her mental illness, defendant was "substantially unable to conform or control her conduct to the requirements of law." That evidence, along with undisputed evidence that defendant suffers from a qualifying mental disorder under ORS 131.295 and ORS 131.300, lawfully has bearing on the court's consideration of proportionality.

We therefore remand the case to the trial court for it to determine in the first instance whether defendant's mental health attributes caused her to have reduced moral culpability for her criminal conduct to the extent that imposing the mandatory minimum sentence would violate Article I, section 16.

Remanded for resentencing; otherwise affirmed.